## Richmond.

# VIRGINIA LUMBER AND EXTRACT COMPANY V. O. D. MC-HENRY LUMBER COMPANY.

### November 15, 1917.

1. LEASE—*Description of Personal Property—Apparatus.*—A lease of lumber lands and a sawmill plant with an option to lessee to purchase the leased premises at a specfied price, described the personal property conveyed as cars, engines, machinery and apparatus, then or thereafter placed on the real estate.

    *Held:* That, the lease covered the entire lumber plant, including all of the property on the premises that was necessary to the operation of the plant, and none other. That is, such property as in the ordinary operation of such plant in the way that this was operated, would be considered as a part of the outfit for its operation. Thus, the following articles passed: A locomotive engine and logging cars; tools, implements and appliances, in use in operating the plant at the time of the lease; furniture, tools and equipment used in camp, shops, barns, office, etc., in actual use at the time of the lease. But supplies held in store for replacement or repairs of machinery and tools did not pass; nor foodstuffs, provisions and medicines for employees and horses, nor the horses used in hauling and work at the plant.

2. APPEAL AND ERROR—*Commissioner's Report—Weight to be Attached to.*—The report of a commissioner in chancery on the value of property, on conflicting evidence, sustained by the circuit court, cannot be properly overruled on appeal. The report of a commissioner, especially when the evidence has been taken in his presence, is entitled to great weight and should not be disturbed unless its conclusions are clearly at variance with the evidence.

3. LIMITATION OF ACTIONS—*Burden of Proof.*—Where the statute of limitations is pleaded, the burden is upon the party pleading the statute to show by a preponderance of the evidence that the cause of action arose more than the statutory period before the suit was brought.

Appeal from a decree of the Circuit Court of Botetourt county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Caskie & Caskie,* for the appellant.

*Haden & Haden,* for the appellee.

KELLY, J., delivered the opinion of the court.

The appellee, O. D. McHenry Lumber Company, being the owner of a tract of land upon which it was operating an extensive sawmill plant, on the 1st day of March, 1910, executed a deed of trust upon the land and plant. In that deed the description of the property concluded as follows: "Together with all mills, houses, buildings, structures, railroads, tramways, logging roads, cars, engines, machinery and apparatus of every kind and character (except public roads and rights of way and other property and appurtenances of railroad companies) now or hereafter built or connected with, or placed on, the real estate hereinbefore described, or any portion thereof, with all the appurtenances thereto, and all other lands, timber, timber rights, and rights of way of the company in the counties aforesaid.

"It is the true intent of the parties hereto that this instrument shall convey the above described property, together with all buildings, structures and improvements of every kind and character which have heretofore been or may hereafter be placed upon said mortgaged property."

After the execution of the deed of trust, the company remained in possession and continued to operate the plant until the 22nd of December, 1911, when it executed a five year lease of the entire property to one E. W. Mulligan,

with an option to Mulligan, at any time before the expiration of the lease, to purchase the leased premises at a specified price. This lease was made for the benefit of the appellant, Virginia Lumber and Extract Company, and was duly assigned to it. The deed of trust is material to the case because, and only because, the description of the property as contained therein determines the property embraced in the lease. There is a slight variance in this respect between the deed and the lease, but this was manifestly accidental and unintentional, and the terms of the lease as a whole leave no room to doubt that the parties intended the lease to cover the identical property which was included in the deed.

The appellant at once assumed possession, and operated the plant under the lease until March, 1915, when it notified the appellee of its intention to avail itself of the option and purchase the property.

The primary question in this litigation is whether certain personal property situated on the premises at the date of the lease taken into possession and use by the lessee and now claimed by it as purchaser, was intended to be included in the lease, and, of course, in the sale also if the option to buy should be exercised. The appellant being a nonresident corporation, the appellee brought an attachment suit in equity seeking to recover the value of the personal property which it alleged the appellant had thus wrongfully converted to its own use.

The cause was referred to Commissioner C. M. Lunsford, and he made a most excellent report upon the various questions referred to him. This report was excepted to on various grounds by both the appellant and the appellee, but all the exceptions were overruled, and a decree was entered in favor of the complainant in accordance with the finding of the commissioner for the value of such personal property taken and claimed by the appellant as was held not to be embraced in the terms of the lease.

From this decree the appellant, which denies liability in any amount, obtained this appeal, and the appellee which claims a much larger sum than the decree awarded, assigns cross-error.

The construction of the lease is not free from difficulty, but with due regard for the rule that it must be construed most strongly against the lessor, as well as for the fact that the parties both understood that the lessee intended to operate the plant and would be likely to have immediate use for the personal property here in dispute, we are of opinion that Commissioner Lunsford has correctly interpreted the meaning of the instrument with reference to the property embraced therein, and we feel that we cannot do better in disposing of this branch of the case than to quote from his report, as follows:

"As it will be necessary for the court in this case to construe the lease to determine whether the property claimed here passed to the lessee under the lease, it is proper to state the character of the several classes of property on the account, so that the court can say whether, in the event some of the property does not come under the language of the lease, there are any portions thereof that do. Therefore your commissioner deems it pertinent to divide the property on these lists into such classifications that in the event the court should not approve the findings of your commissioner as to this property, a decree can nevertheless be entered without a further reference. None of this property is affixed to the freehold or attached to the soil so as to become real estate, but was all, either in use, or for use, in the operation of the plant and the conducting of the business of manufacturing and shipping lumber. It is, however, used in different ways, and is of different character and uses. It may be properly divided into six classes, as follows:

"1. The articles listed in exhibit 'C' being, one locomotive engine and thirty logging cars, charged at $4,300.00.

"2. Tools, Implements and Appliances, in use in operating the plant at the time of the lease, namely: (1) The articles under the head of 'Railroad Grading Tools' charged at $37.65. (2) The articles under the head of 'Logging Tools' charged at $218.71.

"3. Furniture, Tools and Equipment used in camp, shops, barns, office, etc., in actual use at the time of the lease, and listed as follows: (1) The articles under the head of 'Camp Barn' except the horses and medicinal articles, charged at $433.60. (2) The articles under the head of 'Office Furniture and Fixtures,' charged at $165.00. (3) The articles under the head of 'Camp Furniture and Fixtures,' charged at $259.72.

"4. Supplies held in store for replacement or repairs of machinery and tools. (1) The articles under the head of 'Extras at Mill' charged at $1,323.41. (2) The articles under the head of 'Blacksmith Shop Supplies,' charged at $33.49. (3) The articles under the head of 'Camp Blacksmith Shop,' charged at $19.03.

"5. Foodstuffs, provisions and medicines for employees and horses. (1) Articles under the head of 'Camp Supplies' charged at $157.00. (2) Foot-oil, salt, powders, liniment, acid and turpentine, under the head of 'Camp Barn' charged at $10.65.

"6. Horses used in hauling and work at the plant. (1) The six horses under the head of 'Camp Barn' valued at $1,140.00.

"Counsel have requested your commissioner to state the account between the plaintiff and defendants, and show what, if anything, is due to the plaintiff on account of the property sued for in this cause, in addition to the questions specifically referred and from whom. In order to state the account as requested, it will first be necessary to state.

what, if any, of the property sued for passed to the lessee under the lease. As has been stated, the lease by express terms embraced all the property that was conveyed by the trust deed, and the question here is, if default had been made by which the trustees in the deed of trust had been called on to sell the property conveyed by that deed, could they have sold any or all of the property here sued for?

"The only words in the deed of trust (and they are the same in the lease) that relate to personal property, are: 'cars,' 'engines,' 'machinery' and 'apparatus.' And this is confined to such as was then or thereafter 'placed on' the real estate. By the term, 'placed on the real estate,' it is contended that the property must be so attached to the soil as to constitute a part of the real estate, but in this view I do not concur. Much of the machinery and apparatus for the operation of a lumber plant must of necessity be separate from the real estate. The word 'apparatus' is perhaps the most comprehensive word employed, and is defined by Webster to mean: '1. Things provided as means to some end. 2. A full collection or set of implements, or utensils, for a given duty, experimental or operative; any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery, mechanism.'

"Your commissioner construes this lease to cover the entire lumber plant, including all of the property on the premises that is necessary to the operation of the plant, and none other. That is, the property that, in the ordinary operation of such a plant in the way this was operated, would be considered as a part of the outfit for its operation.

"Applying these principles I would find that the articles under Class 1, above, passed under the lease as they are all comprehended under the terms: 'cars and engines,' used in the lease, and were at the time in use in the operation of the plant. The articles under Class 2, being tools used in

the work of operating the plant, and necessary for that purpose, I think, passed under the lease under the designation, 'apparatus.' The articles under Class 3, I think also passed under the lease. While it is true that this was largely household furniture, yet it was part of the equipment of a lumber plant, necessary to its operation in the manner it was then being operated, and must likewise fall under the designation in the lease of 'apparatus.' The articles under Class 4 were not in use in the plant, but were mere stores of such articles as would be needed to replace any parts of machinery that would break or wear out. They were in no sense a part of the 'apparatus' provided for the operation of the plant, but for repairs to the plant when needed. I think these articles did not pass under the lease, but should be paid for. This view is emphasized by the express provision of the lease found in paragraph 16 as follows: 'The lessee, party of the second part, accepts the property in its present condition and agrees to pay for all repairs or replacements which may be necessary during the life of this lease, and turn over the property at the expiration of the lease in good condition, ordinary wear and tear excepted.' The articles under Class 5, being foodstuffs and provisions for the men, were certainly no part of the plant, but constituted a part of the expense of operation, and certainly under no reasonable construction could pass under the lease, and being used by the defendant should be paid for. The horses under Class 6 constitute a different species of property entirely from machinery and apparatus for a lumber plant. I do not think they pass under any designation used in the lease. and therefore should be paid for. While Mr. Roberts testified that he insisted that the horses go in with the other property. yet I do not find that there was any agreement to that effect. but as before stated, both parties stood on the language of the lease."

With reference to the value of the property, which, as fixed by the report, is also the subject of exception by the appellant, the evidence is conflicting, but most of it was taken before the commissioner, he has gone into it carefully, the circuit court has sustained his finding, and, upon a review, we are satisfied that we could not properly overrule the report in this respect.

"It is a familiar rule, many times emphasized in the decisions of this court, that the report of a commissioner, especially when the evidence has been taken in his presence, is entitled to great weight and should not be disturbed unless its conclusions are clearly at variance with the evidence." *Cottrell* v. *Matthews*, 120 Va. 847, 92 S. E. 808, and cases cited.

The remaining question to be disposed of, raised first by an exception to the commissioner's report and later by the answer of the appellant filed after the report was made, is whether the appellee's claim is barred by the statute of limitations. The commissioner does not advert to this question in his report and probably did not have it called to his attention, but the following statement by him has a direct bearing upon the inquiry:

"During the preliminary conversations among the parties, and before the lease was signed, O. D. McHenry called the attention of the gentlemen, or some of them, who were representing the lessee, to the fact that his company had considerable personal property on the premises that he would like to sell to the lessee, and exhibited the list or inventory referred to for their inspection. They promptly declined to agree to pay for any property, but insisted that all of the property on the premises went with the lease, and that the terms of the lease as drawn included it. None of them examined the list, nor was there any discussion about prices. O. D. McHenry in his deposition says that not over thirty seconds was consumed in reference to this

inventory. Just what did take place, or what was said does not clearly appear, and on this matter the evidence is conflicting, but from all the evidence it does appear that the O. D. McHenry Lumber Company, Incorporated, claimed that this property did not pass under the language of the lease, while the gentlemen who represented the Virginia Lumber and Extract Company claimed with equal emphasis that it did. Each party was then and there before the lease was signed put on notice of the claim of the other, yet neither made or suggested any effort to settle the matter by the employment of other language in the lease about which there could be no dispute, nor to agree upon the construction of the language already employed. They stood at arm's length, each relying on the proper construction of the lease to sustain their respective contentions. The lease had been prepared some time before the 14th of December, 1911, and handed to O. D. McHenry by John G. McHenry to be submitted to the stockholders' meeting of the O. D. McHenry Lumber Company, Incorporated, for approval. A meeting of this company was held on the 14th of December, 1911, and after making a slight change, approved it and authorized the board of directors to have it executed. It does not appear in evidence, but from the evidence it may well be inferred that the reason there was no attempt to make the language more explicit in the lease when it came to be executed or to settle the question about the property in dispute, was that both parties wanted to make the lease, and to make any change in its wording would require that it be again submitted to a meeting of stockholders of the McHenry Company, and it was not certain that the change would be approved unless it conformed to their view, and the lessees preferred to stand on the wording in the lease rather than risk another stockholders' meeting. Whether this be correct or not, no effort was made to settle the dispute at that time, but it was left open

for adjustment later. While the matter was several times brought to the attention of the lessee by the officers of the lessor, after the execution of the lease, the matter was never pressed to a conclusion by either side, and no agreement about it was ever reached. * * * It was understood that the claim applied to certain personal property on the premises, and it does not from this record appear that any request was made for an itemized statement of the account, or effort to ascertain the value of the property in dispute.

"Immediately after the execution of the lease the lessee took possession of all of the property sued for in this suit along with the lumber plant at Arcadia as if the same was embraced in the lease, and openly appropriated it to its own uses, and, what has not been consumed in the use, it now holds, claiming that it has the absolute ownership thereof under its deed by reason of the purchase under the option."

It is conceded that three years is the period of limitation applicable to the cause of action asserted in the appellee's bill. The appellant took possession of the leased premises, including the property in dispute, in December, 1911, and it claims that the cause of action, if any, arose then and was therefore barred when this suit was brought in July, 1915. But the appellee, while conceding that the appellant, when the lease was delivered and possession was taken thereunder, claimed that the property in dispute passed to it under a proper construction of the lease, contends that this question of construction was expressly left open for future determination after further consideration of it on the part of the appellant, and that, thereafter, while neither party waived any rights as to the construction of the contract, the appellant used the disputed property with the acquiescence and permission of the appellee until on or about January 1, 1913, when it terminated the situation by a final refusal to pay and a decisive denial of the appellee's claim

to the property, thus for the first time, in contemplation of law, converting the same to its own use. If this be true, then of course the cause of action did not arise until the last named date. See 4 Min. Inst. (3d ed.) 437-8, 543-5: Burks'. Pl. & Pr. 244; Wood on Limitation (3d ed.), section 183; *Logan County Nat. Bank* v. *Townsend*, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 109, 112.

The evidence is in conflict upon this point, but viewed as a whole it tends very strongly to support the appellee's contention. It is argued that the facts found in the report of the commissioner sustain the appellant's contention and show that its possession of this property was adverse from the beginning. We think the contrary is true, in so far as the report bears upon the question. The commissioner, as we have seen, did not appear to have the question of limitation before him. The statement from him which we last quoted was manifestly made with a view to showing that neither party was estopped by any conduct on its part from setting up the construction of the lease contended for by it, and not with any reference to the statute of limitations. He certainly could not have meant to indicate that the claim was barred, else he would not have reported favorably, as he did, upon a part of it. He does say that the appellant immediately after the execution of the lease took possession of the property in question and "openly appropriated it to its own uses," but this statement is qualified and explained by the words, "as if the same was embraced in the lease," occurring in the same sentence. Everything in the commissioner's report, and everything contended for by the appellee as to the circumstances and arrangement under which the appellant took and used the disputed property, is consistent with the right of both parties to stand upon their respective constructions of the lease; and appellee's contention is strongly corroborated, if not conclusively confirmed by the commissioner when he says that "no ef-

16

fort was made to settle the dispute at that time, but it was left open for adjustment later." We have carefully read the testimony of the witnesses, and to say the least that can be said of the question from the appellee's standpoint, the appellant has not shown by a preponderance of the evidence that the cause of action arose more than three years before the suit was brought; and the burden was upon it to do 'so. *Goodell* v. *Gibbons*, 91 Va. 608, 612, 22 S. E. 504.

Having reached this conclusion, it becomes unnecessary for us to decide whether the appellant, a foreign corporation, could under the facts in this case, be permitted to plead the statute of limitations.

With reference to the cross-error assigned by the appellee, it is sufficient to repeat that, in our opinion, the commissioner correctly construed the lease as to what personal property was and what was not embraced therein, and the cross-error is, therefore, without merit.

The decree complained of is right in all respects and will be affirmed.

*Affirmed.*