# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Southside Brick Works, Inc. v. Lelia V. F. Anderson.

### March 17, 1927.

1. FRAUDS, STATUTE OF—*Promise to Answer for the Debt of Another—Consideration—Case at Bar.*—In the instant case plaintiff alleged that the defendant, a house owner, was liable upon a parol promise to pay for bricks furnished by plaintiff to a building contractor, who at the time the bricks were sold and delivered was building a house for the owner. The basis for plaintiff's claim against the owner was the contention that in order to prevent the plaintiff, as a materialman, from filing a lien for the price of the bricks against the building then under construction, she agreed orally to pay for the bricks. The bricks had already been delivered to the contractor, used by him, and charged to him. After the failure of the contractor, at a creditors meeting plaintiff failed to assert this claim and when the contractor filed a petition in bankruptcy, he included this claim among his debts.

   *Held:* That there was no consideration for the owner's promise and that in order to sustain a recovery the promise should have been in writing.

2. FRAUDS, STATUTE OF—*Promise to Pay Debt of Another—Working Contract—Oral Promise of Owner to Pay for Materials or Labor Furnished Contractor—Case at Bar.*—In most of the cases where owners have been held liable upon oral promises to pay for materials or labor furnished contractors, there was a feature which did not appear in the instant case—that is, when the promise was made the work was unfinished, or the materials had not been all delivered, and it was for the express purpose of securing the completion of the work that the owner made the promise. In that class of cases, the consideration is quite apparent and the promise of the owner is frequently held to be original and not collateral. There was no such consideration, however, in the instant case. Here the materials had been sold directly to the contractor, delivered and used. The amount of the debt due by the contractor to the plaintiff was fixed. The owner had no interest in that and received no benefit from the alleged novation of it.

3. WORKING CONTRACTS—*Promise of Owner to Pay for Materials Furnished Contractor—Construction—Materialman Failing to File Mechanic's Lien.*—In the instant case, an action by a materialman against the owner of a building being constructed for materials furnished the contractor, upon the oral promise of the owner to pay for the materials, plaintiff claimed that he was deterred from filing a mechanic's lien by the promise. This, however, was of little import under the facts of the case, for two reasons: Had the contractor filed a mechanic's lien, there would have been no fund or property out of which his debt could have been collected, and long before the time had elapsed when he might have filed a mechanic's lien he knew that the owner disclaimed all personal liability for the debt.

4. CONTRACTS—*Frauds, Statute of—Promise to Pay the Debt of Another—Form of Promise.*—No particular form of words is necessary to show an original promise or conclusion as to the intention of the parties, and the circumstances of each case must be taken into consideration in order to determine the legal effect of such an oral promise to pay the debt of another.

5. FRAUDS, STATUTE OF—*Original Promise or Promise to Answer for the Debt of Another—Intention Governs.*—In ascertaining to whom credit was extended, the intention of the parties must govern. This intention should be ascertained from the words used in making the promise, the situation of the parties and all of the circumstances surrounding the transaction. The real character of the promise does not depend altogether on the form of the expression, but largely on the situation of the parties and what they actually understood by the language—whether they understood it to be a collateral or a direct promise.

6. FRAUDS, STATUTE OF—*Promise to Answer for the Debt of Another—Release of Original Debtor—Case at Bar.*—The instant case was an action by a materialman upon the parol promise of the owner of a building in the course of erection to pay for materials furnished the building contractor. If all the other requisites to support the promise were present, it would still be necessary to show that the original debtor, the contractor, had been released; and this plaintiff failed to show.

7. FRAUDS, STATUTE OF—*Statute Does not Dispense with Requisites of a Contract—Guaranty—Requisites.*—Under the statute of frauds, no requisite of a contract called for by the common law is dispensed with. There is only superadded the requirement that the agreement shall be in writing, signed by the party to be charged, or his agent. Hence, for guaranties there must be, as in all other cases, competent parties, a lawful subject matter, a valuable consideration, and mutuality of assent.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in a proceeding by motion for

a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*O. M. Stumpf,* for the plaintiff in error.

*George B. White,* for the defendant in error.

Prentis, P., delivered the opinion of the court.

Southside Brick Works, Incorporated, hereafter called the plaintiff, filed its motion for judgment against Lelia V. F. Anderson, hereafter called the owner, alleging that she was liable upon a parol promise for $792.90 for bricks furnished a building contractor who at the time the bricks were sold and delivered was building a house for the owner. The basis for the claim against the owner is the contention that in order to prevent the plaintiff, as a materialman, from filing a lien for the price of the bricks against the building then under construction, she agreed orally to pay the bill.

[1] At the trial the jury were instructed that the plaintiff could not recover upon the oral promise, and instructions offered for the plaintiff, submitting to the jury the question whether or not the owner was liable upon such promise, were refused. So that the question is as to whether, under the circumstances of this case, in order to sustain a recovery, the promise should have been in writing.

A brief reference to the surrounding circumstances is necessary in order to determine whether the particular promise is void as within the statute of frauds because not in writing.

The bricks had already been delivered to the contractor, used by him, charged to him, and he was then at work upon the building. On or about October 31st, the plaintiff sent to the owner and her husband this note: "We enclose herewith invoice for $792.90 for brick furnished for your house at No. 2401 Rosewood avenue, this city. Please accept this as notice that we are looking to you for the payment of same." A witness for the plaintiff testified that he went to the owner and told her that they were about to file a lien for the bill, but would not do so if she would pay it, and that she agreed to do so. On the other hand, the owner testified that the plaintiff's agent presented the bill to her and told her that it was "law for her to pay it," and that she told him "if it was law, she would have to pay it." The form of the notice hereinbefore quoted tends to support the testimony of the owner, that the plaintiff's agent sought to impress her with the claim that she was responsible for the bill. Other circumstances to be considered as tending to relieve the owner from liability are, that shortly after October 31st the contractor abandoned his contract to complete the building. At this time he had been paid about $2,700. The owner then, with a view of herself completing the building, secured estimates from other contractors and the lowest bid she could obtain for finishing the construction of the building was $5,022. Inasmuch as the original contract called for the completion of the building at $6,950, it was impossible for the owner to complete it within the original contract price, so that ultimately in accepting this bid the owner was required to pay $7,672, instead of the original contract price.

After this abandonment by the contractor, but before she entered into this contract to complete the

house, the plaintiff and another of the creditors of the original contractor, representing all of the creditors of the insolvent contractor who had claims for work done and materials furnished on this particular building, requested of the owner that they be allowed to submit to her an estimate for completing the work on the dwelling, if they found they could finish the work under the contractor's agreement and save themselves anything. It is emphasized that the plaintiff here was a member of that creditors' committee, and at that time failed to assert the claim now here made, and said nothing then to indicate that he had a valid contract with the owner to pay his bill. This plan for a settlement of their difficulties failed, and the owner then entered into a contract with another contractor to complete her building for $5,022.

At or after that time (the precise date does not appear) the contractor filed a petition in bankruptcy, in which among his debts he included this debt due to the plaintiff here as the manufacturer who had furnished these bricks. The claim which is here asserted against the owner was not made until January 27, 1923.

[2] It is, we think, unnecessary to review the mass of cases involving the construction of the statute of frauds, growing out of building contracts. Some of them have been recently reviewed in *Way* v. *Baydush,* 133 Va. 400, 112 S. E. 611. In most of the cases where owners have been held liable, upon oral promises to pay for materials or labor furnished contractors, there is the same feature which appeared in that case—that is, when the promise was made the work was unfinished, or the materials had not been all delivered, and it was for the express purpose of securing the completion of the work that the owner made the promise. In that

class of cases, the consideration is quite apparent and the promise of the owner is frequently held to be original and not collateral. There was no such consideration, however, in this case. Here the materials had been sold directly to the contractor, delivered and used. The amount of the debt due by the contractor to the plaintiff was fixed. The owner had no interest in that and received no benefit from the alleged novation of it.

[3] We have not overlooked the fact that the plaintiff claims that he was deterred from filing a mechanic's lien by the promise. This is of little import under the facts of this case, for two reasons—had he filed a mechanic's lien, there would have been no fund or property out of which his debt could have been collected and long before the time had elapsed when he might have filed a mechanic's lien, he knew that the owner disclaimed all personal liability for the debt.

[4] It is perfectly well settled that no particular form of words is necessary to show an original promise or conclusion as to the intention of the parties, and that the circumstances of each case must be taken into consideration in order to determine the legal effect of such an oral promise to pay the debt of another.

[5] This clear expression in 25 R. C. L., section 72, page 489, is well supported: "In ascertaining to whom credit was extended, the intention of the parties must govern. This intention should be ascertained from the words used in making the promise, the situation of the parties and all of the circumstances surrounding the transaction. The real character of the promise does not depend altogether on the form of the expression, but largely on the situation of the parties; and the question is always what the parties actually understood by the language—whether they understood it

to be a collateral or a direct promise." *Davis* v. *Patrick*, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826; *Johnson* v. *Bank*, 60 W. Va. 320, 55 S. E. 394, 9 Ann. Cas. 893; *Security Bank Note Co.* v. *Shrader*, 70 W. Va. 475, 74 S. E. 416, Ann. Cas. 1914A, 490; 15 L. R. A. (N. S.) 216, note; 6 Eng. R. Cas. 294; *Richardson Press* v. *Albright*, 224 N. Y. 497, 121 N. E. 362, 8 A. L. R. 1195.

Considering all of these circumstances, it is highly improbable that the owner, under these circumstances, unqualifiedly undertook the payment of this debt. She had no motive for doing so. She offered no inducement to the plaintiff, and had no interest in his alleged release of the contractor.

[6] Even if all the other requisites to support the promise were present, it would be necessary to show that the original debtor, the contractor, had been released. As discrediting this, these facts appear: He having testified that he had been released, concluded his testimony by saying, in answer to this question:

"Now you say you won't deny or affirm whether you told Mrs. Anderson to send the bill back; that you were the general contractor; that she had nothing to do with it?

"A. I can't recall that.

"Q. You won't deny that you told her that?

"A. I couldn't recall it. I don't know whether I did or not."

Two witnesses testify that his general reputation for truth and veracity is bad, and that they would not believe him on oath.

[7] Without reference, however, to all this conflict and uncertainty in the essential facts upon which the plaintiff relies and must show by a preponderance of the evidence, there is the question of consideration. This is fundamental. That such promises must be based upon a valid consideration cannot be denied.

"It must be borne in mind that in this class, as in all other classes under this statute, no requisite of a contract called for by the common law is dispensed with. There is only superadded the requirement that the agreement shall be in writing, signed by the party to be charged, or his agent, Hence, for guaranties there must be, as in all other cases, competent parties, a lawful subject matter, a valuable consideration, and mutuality of assent." 3 Min. Inst., Part I, page 177.

In this connection, we find this in 1 Williston on Contracts, section 452: "It is of assistance in the construction of the next provision of the statute to have in mind the probable purpose of the legislature in providing that promises to answer for the debt of another must be in writing. Why should such promises, more than others, be subject to that requirement? Doubtless because the promisor has received no benefit from the transaction. This circumstance may make perjury more likely because, while in the case of one who has received something, the circumstances themselves which are capable of proof show probable liability, in the case of a guaranty nothing but the promise is of evidentiary value. Moreover, as the lack of any benefit received by the guarantor increases the hardship of his being called upon to pay, it also increases the importance of being very sure that he is justly charged. If these are the reasons for this clause of the statute, it is not a mere technicality to require, as the fundamental element in a valid oral promise to discharge another's liability, the receipt by the promisor of a *quid pro quo*, or beneficial consideration; and whatever conflict there may be in the decisions, it is at least true that without consideration of this kind such a promise is unenforceable."

This view has support in the expressions of Mr.

Justice Brewer, in *Davis* v. *Patrick*, 141 U. S. 479, 487, 35 L. Ed. 826, 12 Sup. Ct. 58: "The purpose of this provision was not to effectuate, but to prevent, wrong. It does not apply to promises in respect to debts created at the instance and for the benefit of the promisor, but only to those by which the debt of one party is sought to be charged upon and collected from another. The reason of the statute is obvious, for in the one case, if there be any conflict between the parties as to the exact terms of the promise, the courts can see that justice is done by charging against the promisor the reasonable value of that in respect to which the promise was made, while in the other case, and when a third party is the real debtor, and the party alone receiving benefit, it is impossible to solve the conflict of memory or testimony in any manner certain to accomplish justice. There is also a temptation for a promisee, in a case where the real debtor has proved insolvent or unable to pay, to enlarge the scope of the promise or to torture mere words of encouragement and confidence into an absolute promise, and it is so obviously just that a promisor receiving no benefit should be bound only by the exact terms of his promise, that this statute requiring a memorandum in writing was enacted. Therefore, whenever the alleged promisor is an absolute stranger to the transaction, and without interest in it, courts strictly uphold the obligations of this statute. But cases sometimes arise in which, though a third party is original obligor, the primary debtor, the promisor, has a personal, immediate and pecuniary interest in the transaction, and is, therefore, himself a party to be benefited by the performance of the promise. In such cases the reason which underlies and which prompted this statutory provision fails, and the courts will give effect to the promise."

These suggestions are applicable to and conclusive of this case. There is no consideration of any kind whatever shown as the basis of this oral promise of the owner. Under the circumstances of this case there could have been no recovery, so that the refusal of the court to give instructions indicating to the jury that they might find a verdict for the plaintiff, if they credited the testimony offered in support of the claim, were properly refused. At the time of the alleged promise, the contractor was at work upon the building. If he had finished it, a considerable sum of money would have been due to him, and out of this the owner doubtless intended to pay the plaintiff's bill, should there be funds sufficient therefor; and this is the fair construction to be placed upon the language and conduct of the parties. She offered no inducement, has received no consideration, and to impose this additional liability upon her would be an injustice. It could not be justified except for clear and unequivocal legal reasons. No such reasons appear and the case has been properly determined.

*Affirmed.*