# Staunton

KRAMER BROTHERS COMPANY v. BERTHA ELIZABETH POWERS,
ADMINISTRATRIX, &c.

September 10, 1953.

Record No. 4066.

Present, Hudgins, C.J., and Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Herbert & Bohannon,* for the plaintiff in error.

*Garrett Baxter* and *Ivor A. Page, Jr.,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

On December 1, 1950, C. B. Powers, a building contractor, entered into an agreement with W. H. Ferebee to construct a residence in the city of Norfolk at an agreed price of $19,437. Construction was begun on the job and the house had been partially completed when Powers died on February 16, 1951. At this time Ferebee had paid $10,500 on the contract price, leaving a balance due upon completion of $8,937, plus a small amount for extras.

At the time of his death, Powers owed bills to various firms who had furnished materials to the Ferebee job, including a bill to Kramer Brothers Company for lumber furnished under contract.

On the day following Powers' funeral, Ferebee called the Kramer company at its plant in Elizabeth City, North Carolina, and ordered the delivery of certain materials. Kramer, knowing of Powers' death, and holding the past due account, refused to ship on Ferebee's order. Immediately thereafter W. I. Hoffler, Kramer's representative, came to Norfolk for the purpose of ascertaining who was to be responsible for future shipments. Hoffler contacted Ferebee and inquired as to who would pay for future orders, to which inquiry, according to Hoffler, Ferebee responded, "Don't hold up the job. I will see that you get your money." Being thus assured, the Kramer Company made further shipments to the job, continuing to carry the account in Powers' name on its books.

On February 20, 1951, after Hoffler's conference with Ferebee, Bertha E. Powers, widow of decedent, qualified as administratrix of her husband's estate, and a son, W. W. Powers, who was also a builder, undertook to supervise for her the completion of the house.

Upon its completion, the administratrix filed a bill in the Circuit Court of the City of Norfolk praying for "a full accounting with W. H. Ferebee on account of said contract", and requesting that the balance due thereunder be established and properly disbursed on a *pro rata* basis to the defendants (the creditors) who had furnished materials and labor.

Kramer Brothers Company, one of the defendants, filed its answer setting forth the indebtedness to it for materials furnished *prior* to Powers' death. A cross-bill was also filed by the company alleging that Ferebee had promised to pay for all materials furnished by it *after* Powers' death, and prayed for a personal judgment against Ferebee for the value of such purchases.

The master commissioner, to whom the cause had been referred, after fully hearing the evidence, filed a report recommending a judgment in favor of Kramer Brothers Company against Ferebee in the sum of $549.10, which sum represented the balance due Kramer on purchases made after the death of Powers.

Exceptions were filed by Ferebee to this part of the commissioner's report, and the court, by its decree held that the promise of Ferebee to pay for purchases made after Powers' death (if such promise was made) was an oral promise and therefore not binding on Ferebee by virtue of section 11-2, subsection 4, Code of 1950, known as the statute of frauds. Thus that portion of the commissioner's report recommending the personal judgment against Ferebee in favor of Kramer was disallowed. To this ruling we granted Kramer Brothers Company an appeal.

The issue for decision is whether the promise made by Ferebee (if such promise was made) was a promise to answer for the debt of another and hence unenforceable because not in writing and signed by the party to be charged, or whether it was an original promise and therefore enforceable though not in writing.

The evidence before the commissioner disclosed that construction stopped after Powers' death; that on the day following the funeral Ferebee directed Kramer to deliver materials to the job; that Kramer refused because it did not know who would pay for the deliveries; that no administrator had then been appointed; that Hoffler, Kramer's representative, was sent from Elizabeth City, North Carolina, to Norfolk, Virginia, for the purpose of ascertaining who would pay for further shipments, and that when Hoffler reached

Norfolk he found Ferebee at the job. The statements of Ferebee to Hoffler are thus testified to by those present:

W. W. Powers testified that, "If I am not mistaken (Ferebee said) that he would take care of the balance, to go ahead with the job, and to go ahead and bring up the materials."

Roy Lee Tyson testified that, "He, (Hoffler) said he wanted to know who was going to be responsible for material for the job, and Ferebee told him not to hold it up, to send it on and he would see he got his money. * * * They are the words that was passed and stated, and the material came that day."

Hoffler testified that Ferebee told him, "Don't hold up the job. I will see that you get your money."

Ferebee testified that he "didn't recall" telling Hoffler to send the materials so he could get on with the job. He also denied assuming the debt for future materials. He said, "No, sir, I never assumed nothing"; and, "if they had carried the thing out in the right way they would have had enough to pay off. It didn't take $9,000 to finish it in the condition Mr. Powers left it. Five or six thousand dollars would have finished it."

Ferebee was asked:

"Q. You thought there was ample there at that time to pay off?

"A. There was ample funds due to take care of everything."

Ferebee admitted on cross examination: "Naturally I wanted the job to go through. * * * If Mr. (W. W.) Powers had not taken over I could have finished it."

While section 8-250, Code of 1950, provides that the report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, and that the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence, we have repeatedly held that the report of a commissioner, when the evidence has been taken before him, as was done in this case, is entitled to

great weight and it should not be disturbed unless the commissioner's conclusions are clearly unsupported. *Ingram* v. *Ingram*, 130 Va. 329, 107 S. E. 653; *Cottrell* v. *Mathews*, 120 Va. 847, 92 S. E. 808; *Va. Lumber Etc. Co.* v. *McHenry Lumber Co.*, 122 Va. 111, 94 S. E. 173. See also *Kraker* v. *Shields*, 20 Gratt. (61 Va.) 377; *Bowers* v. *Bowers*, 29 Gratt. (70 Va.) 697; *Stuart, Etc. Co.* v. *Hendricks*, 80 Va. 601; *Dermott* v. *Carter*, 151 Va. 81, 144 S. E. 602.

In the instant case it can hardly be denied that Ferebee made the promise to Kramer's representative, Hoffler, as claimed. The overwhelming evidence is that he did. Ferebee's contention is that Kramer did not change the billing on its ledger but continued to charge materials delivered after Powers' death as he had charged them before. And he further contends that even if the promise was made, there was no independent consideration present to constitute the promise an original one,

With this we cannot agree. It was natural for Kramer to continue the account in Powers' name since it was for the same job. Ferebee had a personal, immediate and pecuniary interest in the receipt of the materials, and the deliveries were for his benefit. *Hurst Hardware Co.* v. *Goodman*, 68 W. Va. 462, 69 S. E. 898, 32 L. R. A. (NS) 598, Ann. Cas. 1912B 218; 49 Am. Jur., Statute of Frauds, § 92, note 11, page 449; 8 M. J., Frauds, Statute of, §§ 9, 10, page 769; *Davis* v. *Patrick*, 141 U. S. 479, 35 L. ed. 826, 12 S. Ct. 58. See also *Emerson* v. *Slater*, 22 How. (U. S.) 28, 16 L. ed. 360; *Way* v. *Baydush*, 133 Va. 400, 112 S. E. 611.

If the materials in this instance had been delivered to the job upon Powers' credit a promise to pay therefor by Ferebee would, of course, be within the statute of frauds. But such is not the case. Ferebee testified that he thought the $9,000 remaining due on the house at the time of Powers' death would be more than enough to pay all bills. Evidently with this thought in mind, he, without hesitation, told Kramer's representative not to hold up the job, that he would see that the company got its money. It is evident

that Kramer refused to ship further materials until it ascertained the source of payment. At the time of Ferebee's promise to Kramer, Powers was dead and his personal representative had not been appointed. In this situation there was no one who had the legal right to bind the estate.

Ferebee had an unfinished house on his hands. He naturally desired to see it completed. He did not want to see the work held up. When Ferebee agreed to pay Kramer for materials to be shipped under these circumstances his promise to pay became an original promise based upon a valuable consideration.

In *Way* v. *Baydush, supra* (133 Va., at page 404), Judge Burks quotes from 25 R. C. L. 522 as follows: " * * * Where the owner of property undertakes to pay for work and materials to be subsequently done and furnished by a subcontractor in order to secure the completion of a building in a case where the principal contractor has failed to carry on the work, the promise is an original one, and not within the statute; this principle is intrinsically just and its enforcement does not in the slightest degree tend to the mischief the statute was intended to repress." 49 Am. Jur., Statute of Frauds, § 135, p. 476.

In this instance it was plain to Ferebee that Kramer was holding up shipments and that they would not be forthcoming until he assumed payment thereof. Kramer was looking solely to Ferebee for payment. The very day the promise of payment was made by Ferebee the shipment came forward. The intention of the parties was plain. Kramer was unwilling to risk its materials without Ferebee's promise to pay, and Ferebee was willing to give the promise to get the materials and have his unfinished house completed.

The circumstances surrounding the situation in which the parties here found themselves render their dealings most natural. No particular form of words is necessary to show that the parties intended an original promise. The circumstances of each case must be taken into consideration in order to determine the legal effect of the oral promise. We are of the opinion that the commissioner was correct in hold-

ing that the promise of Ferebee to Kramer was an original promise and did not come within the statute. *Alessandrini* v. *Mullins*, 178 Va. 69, 73, 16 S. E. (2d) 323; *Southside Brick Works* v. *Anderson*, 147 Va. 566, 137 S. E. 371; *Way* v. *Baydush, supra.*

For the reasons stated, we reverse the decree of the trial court, reinstate the commissioner's recommendation, and here enter final judgment in favor of Kramer Brothers Company against W. H. Ferebee in the sum of $549.10.

*Reversed and final judgment.*