# Richmond

## MARIE MONK v. J. P. WALTERS, TRADING AS WALTERS LUMBER COMPANY, ET AL.

October 12, 1953.

Record No. 4107.

Present, All the Justices.

The opinion states the case.

*A. T. Griffith,* for the appellant.

*R. E. Boucher, Dorothy Buck Boucher* and *Raymond J. Boyd,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Marie Monk, the appellant, brought this suit in equity against J. P. Walters, trading as Walters Lumber Company, John Ketron and W. T. Ketron. She alleged in her bill that she had made a contract with John Ketron to furnish the labor and materials and build for her a house for $12,000; but that Ketron did not comply with his contract and after a time informed the appellant that he was not financially able to provide the remaining labor and materials necessary to complete the building, and asked appellant to provide them for him; that she accordingly furnished labor and materials amounting to $2,496.50 to complete the house; that at Ketron's request she had paid to J. P. Walters $3,000 for materials furnished by him; that she had also paid Ketron $3,525 for labor, and after paying these items and withholding $60 for necessary correction in the heating system, she had only $2,918.50 left out of the $12,000.

Appellant further alleged in her bill that on September 20, 1950, Walters gave notice to her that he was filing a mechanic's lien for $5,600, and on October 9, 1950, W. T.

Ketron gave notice that he claimed a labor lien, but that she had not employed W. T. Ketron and that these two purported liens were clouds on her title which she prayed might be removed.

Appellant also prayed that Walters and W. T. Ketron be required to show the particulars of their claims to the fund in her hands; that proper accounts be taken, and that she be directed to pay the balance of the fund to those entitled.

W. T. Ketron filed his answer and cross-bill setting up his labor lien and asking that the property be subjected to its payment. On motion of Walters appellant filed a bill of particulars of her claim to credits. Walters thereupon filed his answer and cross-bill claiming that appellant contracted to pay him $8,600 for the materials for the house and to pay John Ketron $3,400 for the labor; that after the $3,000 payment to him by the appellant he continued to furnish materials until September 15, 1950, when there was a balance due him of $3,617.82 which he could not get appellant to pay, so he stopped furnishing materials and filed his mechanic's lien; that afterwards appellant promised that if he would furnish materials to complete her house she would pay him the balance then due and for all future deliveries; that in consideration of that promise he resumed delivery of materials on September 26, 1950, and the materials furnished after that amounted to $4,012.24. He asked judgment for $7,630 and for an issue out of chancery to determine the amount due him.

The appellant moved to strike Walters' answer, Code § 8-122, but the court overruled her motion and over the objection of Walters, but without objection by appellant, referred the cause to a commissioner to report the liens against the property, what amount of the contract price remained in the hands of the appellant and all other matters deemed pertinent by the commissioner or by any party in interest.

The commissioner, after hearing evidence at length, reported that the appellant owed to Walters $7,323.95 and to W. T. Ketron $448. He did not report any other liens or debts against the property. The appellant filed exceptions to the report which were overruled, and by the decree appealed from the court granted judgments in favor of Walters and W. T. Ketron for the respective amounts, adjudicated that Ketron's mechanic's lien was valid and ordered a sale of the property to satisfy that lien.

The appellant makes nine assignments of error to that decree but in her brief they are grouped and argued under three headings: (1) The motion to strike Walters' answer should have been sustained; (2) The judgment in favor of Walters was contrary to the law and the evidence, and (3) The W. T. Ketron mechanic's lien was invalid. For an understanding and proper disposition thereof we must look to the evidence.

On March 30, 1950, the appellant and John Ketron entered into a written contract by which it was agreed that for $12,000 Ketron would furnish the materials and labor:

"To build Duplex House No. 550 shown on Page 6 in L. F. Garlinghouse Co. plan book as per blueprint and furnish all light fixtures, screen all windows, Venetian blinds on all windows, hot air heat coal fired, concrete between front doors, do all work in a workmanlike manner, tile bath & kitchen floors with rubber base, and asphalt tile. Basement walls as desired by purchaser. Subject to specification in # 147 and blueprint."

This contract was on a form used by Walters Lumber Company and the quoted part was written by Walters. Present when it was executed were Mrs. Monk and her husband, John Ketron, Walters and K. B. Jessee. Walters and Ketron had been associated in the construction of other houses and on this occasion it was agreed between them that Walters would furnish the material for $8,600 and Ketron the labor for $3,400, and Walters was to pay Ketron 5% of the sale price of the materials. Mrs. Monk and

her husband admitted that they knew that Walters was to furnish the materials but denied knowledge of the arrangement between Walters and Ketron. However, the commissioner and court found that this arrangement was known to Mrs. Monk, and the evidence clearly shows that it was agreed that Mrs. Monk was to pay Walters, not Ketron, the $8,600 for the material. John Ketron, called as a witness by appellant, testified that the contract was made between him, Walters and Mrs. Monk and was "a three-way deal;" that Mrs. Monk changed the written contract by letting Walters furnish the materials, and had settled with him, Ketron, in full for the labor. Appellant's husband himself testified that certain changes in the contract were "agreed and understood by all three of them at the time the contract was signed."

The L. F. Garlinghouse Company plan book referred to in the contract was put in evidence. On page 6 it shows a picture of house No. 550 that was to be built. Beside it is a small diagram about 2½ x 3 inches colored as a blueprint, showing one floor divided into a living room, dining room, kitchen and bedroom, giving their dimensions, together with two closets and a bathroom on each side of the duplex house. Underneath is printed this description:

"The plan shows four complete rooms, bath and closets on each side. The large closets opening into the living rooms may be used for disappearing beds, thus giving each side five-room efficiency. The stairs going up from the living rooms and the high pitched roof make it possible to have a fine large room on the second floor for each apartment, if desired."

Specifications # 147, referred to in the contract, was also filed in evidence. It was a printed booklet of twelve pages with blanks to be filled in. These blanks were first filled in by Walters. There were additions, some of a material nature, in the handwriting of Jay Monk, appellant's husband. Walters claimed these additions were made after the contract was executed and without his knowledge or consent.

Appellant and her husband, supported in some degree by Jessee, testified they were made before the contract was signed. The commissioner held with the appellant on that point and there was no exception by Walters.

The blueprint referred to in the contract was not at hand when the contract was executed. At the request of Ketron Walters ordered blueprints from the Garlinghouse Company, one set for Ketron and one for himself. They came in three sheets, one showing elevations, one showing basement and floor plan and the third showing construction details. There was no blueprint for a second floor.

On August 10, 1950, Mrs. Monk gave her check to Walters for $3,000, marked "For payment on house." Ketron said he knew nothing about that payment. About a month later Walters asked appellant for a further payment. He testified she promised to pay, but failed to do so, and on September 20, 1950, he filed a mechanic's lien, verified by affidavit, setting forth that Ketron was indebted to him in the sum of $5,600 for materials for which he claimed a lien on the house being built for Mrs. Monk.

Two or three days later Mrs. Monk and her husband came to see Walters at his house at night. Walters testified she told him Ketron had quit, but she would try to get him to finish the house; that she was taking over and changing the whole setup, and if Walters would furnish the material she would pay him for it. A few days later Mrs. Monk and her husband came again to see Walters at his office for the same purpose. He thereupon resumed the sending of materials on September 26, 1950. Mr. and Mrs. Monk admitted the visits but denied that she agreed to pay for the materials.

Some days later—Walters testified it was about the middle of October—Ketron came to see Walters and asked him if he could get an upstairs blueprint for the house. Walters replied, so he testified, that he could not get it from this company because they did not make it. Ketron then asked him to have one made, which Walters did from a sketch

that Ketron had drawn. This blueprint was filed in evidence and an instructor in the Technical School at Abingdon testified he made it at Walters' request, but he could not fix the time any more definitely than that it was after September 1, 1950.

Reverting to appellant's contentions as stated above, there was no error in the refusal of the court to strike Walters' answer. Appellant's motion was on the grounds (1) that Walters was estopped to deny the assertion in his mechanic's lien that Ketron owed him for the materials; (2) that the contract alleged to have been made by Mrs. Monk was to pay the debt of Ketron and was therefore void under the statute of frauds; (3) that the answer sought recovery of a money judgment, which equity was without jurisdiction to grant. The answers to these contentions are (1) the answer of Walters did not seek to enforce the mechanic's lien and asserted no right under it; (2) the answer did not seek to hold Mrs. Monk on Ketron's promise, but on her own promise made directly to Walters, and hence not within the statute of frauds; (3) the appellant brought Walters into equity and invoked its aid to ascertain the status of her accounts with him and the other defendants and to release her property from liens asserted against it. The equity court refused Walters' motion for a jury trial and its jurisdiction to direct an accounting and to grant complete relief is clear. *Iron City Bank* v. *Isaacsen*, 158 Va. 609, 625, 164 S. E. 520, 525.

Appellant next contends that the judgment below in favor of Walters was contrary to the law and the evidence. The basis of that judgment was the finding of the commissioner that the contract of March 30 did not provide for finishing the upstairs and that the appellant was liable to Walters for the balance due on the $8,600 and, in addition, for the materials furnished by him in the construction of the second floor. The appellant contends that the March 30 contract covered labor and materials for a two-story house

with finished rooms upstairs, and hence she was not liable for additional materials.

We measure the finding of the commissioner by the rule stated in *Kramer Brothers Co.* v. *Powers,* 195 Va. 131, 134-135, 77 S. E. (2d) 468, 470, "that the report of a commissioner, when the evidence has been taken before him, as was done in this case, is entitled to great weight and it should not be disturbed unless the commissioner's conclusions are clearly unsupported." The record discloses ample evidence to support the finding.

Neither the Garlinghouse plan book nor specifications # 147, which admittedly contained all the description of what was to be built that the parties had when the contract was made, called for finishing the upstairs. As stated above, the house pictured in the plan book was to have four complete rooms on each side, and the diagram with the picture showed those rooms to be all on one floor. The printed description under the picture said it was possible to have a large room on the second floor of each apartment "if desired." Clearly, completion of a second story would have had to be expressly contracted for.

Walters testified that completing the second floor was not mentioned when the contract was made. There was no contradiction of that statement by anybody present at the making of the contract other than Jessee, who testified "the best I remember, * * it was to be a turn-key job, upstairs and down;" that the upstairs was to be finished about like the downstairs "the way I understood it." But he further testified that he heard only random parts of the conversation and paid no particular attention to it. He also testified that the picture in the book showed an upstairs and that after they agreed on the papers, Jay Monk put something in about the upstairs. Both of the latter statements were incorrect and neither Mrs. Monk nor Mr. Monk nor John Ketron testified that anything was said about the upstairs. Moreover, Ketron, who apparently tried to be accurate in his testimony, was not recalled by the appellant to refute

the testimony of Walters that the first time he heard of any upstairs work was when Ketron came to see him in October to get a blueprint for that work.

It is undenied that the blueprint furnished by Garlinghouse for the construction of house No. 550 in its plan book covered only the first floor and the basement.

Walters called a witness of some twenty years' experience as an appraiser of real estate for banks, insurance companies and others in the area of this property, who examined the property and made and filed a list of the differences in construction between the house described in the plan and the house as actually built. Some of these differences were in the additions made to the specifications by appellant's husband, which the commissioner found to have been made before the execution of the contract; but the main difference was in the change from an unfinished second story contemplated by the plans to a finished second story as constructed, consisting of four bedrooms and six closets, finished in the same manner as the first floor. This witness also filed a statement comparing the cost of construction according to the plans with the cost of the existing building based on April, 1950, prices, and found a cost of $5,021 for materials and labor for the second floor in excess of what was called for in the plans.

Against this firm support for the commissioner's finding the appellant urges the evidence of Jessee, the fact that specification # 147 called for second floor joists; a calculation based on the number of square feet in the first floor plus a supposed 672 square feet in the second floor (the appraiser found 1136) multiplied by $4.50 per square foot (which Walters testified was the figure he used to arrive at the $8,600 cost of materials under the written contract), resulting in a total cost of $11,914.65 for a two-story building against $12,000 under the written contract. This calculation does not serve the appellant, however, because the result would show the cost of material alone, and it is significant that multiplying the square feet of the first

floor by $4.50 per square foot and adding 10% as Walters testified he did, gives $8,588.25, only a few dollars less than the $8,600 which Walters said was the amount to be paid for materials for a one-story building.

Appellant filed a letter dated November 30, 1950, to her from an attorney then representing Walters, stating that Walters had employed his firm to bring suit and collect $5,600 "owing to him from you," for which a lien had been filed on her house, and asking her to pay without suit. This letter was written after all the materials for the house had been furnished. Walters testified that he told his attorney that he would settle for the lien to save a law suit and was willing to lose $2,000 to settle the matter peaceably. While such degree of concession may be unusual, it cannot be said to be incredible, and the letter is not sufficient to overcome the weighty evidence in support of the commissioner's finding that the contract did not cover the upstairs. Affording some additional support for that finding, too, is a letter from Walters to Mrs. Monk dated December 30, 1950, returning to her her check for $67.90. The letter stated:

"The check that you gave us for your Special Account for $67.90 we are sorry to state but we cannot cash due to the fact that your husband marked it FOR EXTRA MATERIALS FOR KETRON JOB. The extra materials for the Ketron job is near $1700.00 as you know. No doubt he meant to write FOR MATERIALS FOR SPECIAL ACCOUNT."

It is not disputed that Walters furnished the materials used in finishing the second story. It being established that those materials were furnished in addition to those covered by his contract, Walters is entitled to have the fair market value of those additional materials.

The commissioner, using the original contract price and the figures of the appraiser, found $3,619 as the cost of these additional materials. He added the contract price of $8,600, deducted the $3,000 paid by Mrs. Monk and $1,-895.05 for material and labor furnished by her as claimed in her bill of particulars, and thus arrived at an overall balance

due Walters of $7,323.95, for which the court entered judgment.

However, this result allows Walters more than is shown to be due him by his own records, and he testified that he claimed only for what Mrs. Monk got, less her credits. He filed itemized statements of account for all materials furnished from April 13 to December 6, 1950. These statements listed the invoices by number and amount, and the invoices showed the materials and the prices. The evidence is that these records were kept in regular course of business and there is no evidence to discredit the items or the prices. The total of the statements is $11,312.84. Credit was given thereon to Mrs. Monk for $689.78 for materials returned, leaving a net charge of $10,623.06. Against that charge Mrs. Monk is entitled to these credits: $3,000 paid by her to Walters; $1,435 for the cost of material which Walters failed to furnish under his contract and which Mrs. Monk supplied (she is not entitled to credit for the extra labor claimed in her bill of particulars because Walters was obligated only for materials); and $85 saved by Walters in placing rafters on 24-inch centers instead of 16-inch centers as contracted. This leaves a balance due Walters of $6,-103.06 instead of $7,323.95 as found by the commissioner and the court. This method of calculation allows Walters $4,080 for the balance due on his $8,600 contract with Mrs. Monk, together with $2,023.06 for materials furnished for the second story.

The assignment of error to the granting of a judgment in favor of W. T. Ketron for labor and to the holding that he had a valid mechanic's lien in that amount, was well taken. The evidence shows that W. T. Ketron was employed by John Ketron, who contracted with appellant to furnish the labor necessary for the building. At the time of the filing of the mechanic's lien, October 9, 1950, appellant had paid John Ketron for labor $3,525, being $125 more than she had contracted to pay him. She was, there-

fore, not liable to W. T. Ketron for his wages or because of his mechanic's lien.  Code, § 43-7.

The decree appealed from is accordingly modified as to the amount of the judgment in favor of Walters and judgment will be entered here in the sum of $6,103.06 with interest from September 25, 1952, the date of the decree appealed from; and said decree is reversed so far as it grants judgment in favor of W. T. Ketron and holds his mechanic's lien to be valid.  A decree shall be entered by the court below annulling said lien and removing it from appellant's title.

So much of the decree appealed from as appoints a special commissioner and orders a sale of the property to satisfy the mechanic's lien of W. T. Ketron is vacated and annulled, and this cause is remanded for the entry of a further decree as herein directed.  Walters shall be allowed to file in this suit a supplemental bill for the collection of the judgment here to be entered, and for proper proceedings thereon, if he so elects.  The appellee, Walters, having substantially prevailed, shall recover his costs here and in the trial court.

*Modified in part, reversed in part*
*and remanded.*