557 F.2d 1050
 GLEN CONSTRUCTION COMPANY, INC., Appellant,
v.
BANK OF VIENNA, Chantilly Crushed Stone, Scott Kurt
Construction Co., Fairfax Equipment Rental Corp.,
W. B. Clark, United States of America, Appellees.
 No. 76-1812.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 16, 1977.
Decided June 30, 1977.
 
 Carol A. Sigmond, Arlington, Va. (Miller, Miller, Patterson & Reese, Arlington, Va., on brief), for appellant.
 Arthur B. Vieregg, Jr., Fairfax, Va. (Frank D. Swart, Fairfax, Va., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and BUTZNER and RUSSELL, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 Glen Construction Co. appeals a judgment in favor of Chantilly Crushed Stone, Inc., in an amount of approximately $10,000 for the cost of stone delivered to a building site. We reverse because a subcontractor, Scott Kurt Construction Co., instead of Glen, was obligated to pay for the stone.
 
 
 2
 As general contractor for the Sherwood Medical Building, Glen subcontracted with Scott Kurt in February, 1975, to provide the project with a site water line, sanitary lines and storm drains. In turn, Scott Kurt arranged to purchase crushed stone from Chantilly for the work. During the summer of 1975, both Glen and Chantilly realized that Scott Kurt was in financial trouble. Because Chantilly was reluctant to deliver the stone which Scott Kurt ordered for July and August, Glen offered to pay Chantilly directly or to issue checks payable jointly to Chantilly and Scott Kurt. Ultimately, Glen and Chantilly settled on the joint check arrangement. Chantilly continued to make deliveries and to bill Scott Kurt, sending copies of the bills to Glen.
 
 
 3
 In June, July, and August, 1975, the United States filed tax liens against Scott Kurt, and in the latter part of July, it served the first of two levies on Glen. Glen then issued joint checks pursuant to the agreement. However, upon advice of counsel that such payment might be illegal because of the levy, Glen stopped payment on the checks.
 
 
 4
 Glen then filed an interpleader action in the district court and paid into its registry all of the funds it owed Scott Kurt, including the amount due for the stone. Chantilly filed its claim against the deposit in the interpleader action and also filed a cross-claim against Glen, asserting that Glen had promised to pay it for the stone.
 
 
 5
 The district court awarded all the funds deposited by Glen to the Internal Revenue Service on the basis of its priority over the claims of Scott Kurt's other creditors.* The court also ruled that Glen was independently indebted to Chantilly, or alternatively, that it was liable as a guarantor. The court's decision required Glen to pay twice for the stone.
 
 
 6
 In Lawson v. States Constr. Co., 193 Va. 513, 518, 69 S.E.2d 450, 453 (1952), involving a dispute between a general contractor and a subcontractor's supplier, the Supreme Court of Virginia stated:
 
 
 7
 In ascertaining to whom credit was extended, the intention of the parties governs. This intention is to be ascertained from the words used by the parties and all of the circumstances surrounding the transaction. The real character of the promise does not depend altogether upon the words or form of expression used, but largely upon the situation of the parties and what they mutually understood from the language, whether they understood the transaction to be a direct or a collateral promise.
 
 
 8
 In the instant case, all circumstances indicate that Glen agreed only to afford Chantilly security by issuing checks jointly payable to Scott Kurt and Chantilly; Glen did not contract with Chantilly to buy the stone for its own account. Scott Kurt remained the purchaser of the stone under the original agreement, and Chantilly billed it as such. Chantilly's intention to continue dealing with Scott Kurt is further evidenced by its claim in the interpleader action in which it acknowledged that it "supplied said stone to said job at the request of Scott Kurt Construction Company."
 
 
 9
 Glen fully discharged its promise to furnish security to Chantilly: first, by issuing the joint checks; and second, by depositing the funds owed Scott Kurt into the registry of the court when the United States' levy made disbursement by joint check unlawful. It was the superior claim of the Internal Revenue Service rather than any default by Glen that deprived Chantilly of the funds.
 
 
 10
 Chantilly's reliance on Kramer Bros. Co. v. Powers, 195 Va. 131, 77 S.E.2d 468 (1953), is misplaced. There, the court found that upon the death of a contractor who was in debt to a supplier, the owner of the building under construction promised the supplier that he would pay for future deliveries. The court held that this assurance, followed by delivery of the materials, amounted to an independent contract rendering the owner liable to the supplier.
 
 
 11
 In contrast to the situation in Kramer, Glen did not contract to buy the stone directly from Chantilly, nor did it unqualifiedly promise to guarantee payment for the stone. It promised only to issue joint checks to Chantilly and Scott Kurt. In effect, this arrangement afforded Chantilly security by preventing Scott Kurt from diverting the purchase price of the stone without Chantilly's consent. Glen, however, never promised expressly or impliedly to protect Chantilly from a creditor of Scott Kurt who obtained a superior lien on Scott Kurt's assets. We therefore conclude that Chantilly cannot recover from Glen for stone delivered to the job site. Its only recourse is against Scott Kurt. The judgment of the district court is reversed, and final judgment is entered for Glen.
 
 
 
 *
 The interpleader action in the district court is reported as Glen Constr. Co. v. Bank of Vienna, 410 F.Supp. 402 (E.D.Va.1976)