# Staunton

JOHN J. ALESSANDRINI, TRADING AS THE CHARLESTON TILE AND MARBLE WORKS v. GEORGE W. MULLINS.

September 10, 1941.

Record No. 2440.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*S. H. & George C. Sutherland* and *R. E. Williams,* for the plaintiff in error.

*H. Claude Pobst* and *Marjorie Coleman,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action at law was brought by plaintiff in error to recover of George W. Mullins and Rachel V. Mullins the principal sum of $623, the amount alleged to be due plaintiff by reason of material furnished and labor performed in the laying of a terrazo floor in the hotel building of defendants, situated in the town of Grundy, Virginia.

There was a trial by a jury, which resulted in a verdict in favor of the plaintiff against the defendant, George W. Mullins.

Upon motion of the defendant, the trial court set aside the verdict of the jury and entered final judgment in favor of the defendant. From that judgment a writ of error has been awarded.

It was the contention of the defendant that the alleged promise was a promise to pay the debt of Cline Brothers

with whom defendant had entered into a contract to erect the hotel building, and that not being in writing, it was void under the statute of frauds. This contention was sustained by the trial court.

The sole question for our determination is whether the evidence introduced by the plaintiff is sufficient to establish an original independent undertaking on the part of the defendant to pay for the work done by the plaintiff.

■ The action of the trial court in setting aside the verdict of the jury and in entering judgment in favor of defendant was an exercise of the power conferred by section 6251 of the Code of Virginia. This section is a salutary enactment, but it does not confer arbitrary power upon a trial court to set aside a verdict rendered by a jury. The power can only be exercised where the verdict is plainly contrary to the evidence, as the only office of the statute is to test the sufficiency of the evidence. *Norfolk, etc., Ry. Co.* v. *T. W. Thayer Co.,* 137 Va. 294, 119 S. E. 107.

Section 5561 of the Code, known as "The Statute of Frauds," provides:

"No action shall be brought * * * to charge any person upon a promise to answer for the debt, default or misdoings of another * * * unless the promise * * * be in writing and signed by the party to be charged thereby, or his agent; * * * ."

This statute has been a fruitful source of litigation and has been so frequently construed by this court that it is inexpedient to attempt to consider all of the decided cases.

In the principal case of *Noyes' Ex'x* v. *Humphreys,* 11 Gratt. (52 Va.) 636, Judge Allen said:

■ "The cases upon undertakings coming within the scope of that branch of the statute of frauds prescribing the mode in which the special promise to answer for the debt, default or misdoings of another person should be made, have been numerous, and many subtle, if not

shadowy, distinctions have been taken. Every collateral promise to answer for the debt, default or misdoings of another person, is within the statute, and void if not in writing; but original undertakings need not be in writing, not being within the statute. The difficulty is in determining under which head the undertaking in any partcular case is to be classed.''

The rule laid down in that case was approved in *Way* v. *Baydush,* 133 Va. 400, 112 S. E. 611, by Judge Burks who said:

■ ''In *Noyes* v. *Humphreys,* 11 Gratt. (52 Va.) 636, the prior cases in this jurisdiction are cited and it appears from them that the holding in this jurisdiction is that if the original contractor remains liable and the undertaking of the new party is merely that of surety or guarantor, the undertaking of the latter is collateral and within the statute of frauds. We do not propose to depart from that holding in this case.''

In *Southside Brick Works* v. *Anderson,* 147 Va. 566, 571, 137 S. E. 371, Chief Justice Prentis said:

■ ''It is perfectly well settled that no particular form of words is necessary to show an original promise or conclusion as to the intention of the parties, and that the circumstances of each case must be taken into consideration in order to determine the legal effect of such an oral promise to pay the debt of another.

■ ''This clear expression in 25 R. C. L., section 72, page 489, is well supported: 'In ascertaining to whom credit was extended, the intention of the parties must govern. This intention should be ascertained from the words used in making the promise, the situation of the parties and all of the circumstances surrounding the transaction. The real character of the promise does not depend altogether on the form of the expression, but largely on the situation of the parties; and the question is always what the parties actually understood by the language—whether they understood it to be a collateral or a direct promise.' ''

It is thus to be observed that the difficulty lies, not so much in determining the law applicable, but in determining whether, in view of the evidence, the promise relied upon by the plaintiff was a collateral or an original promise.

Though denied *in toto* by the defendant, the evidence adduced by the plaintiff makes out the following case: On October 12, 1939, defendant entered into a written contract with Cline Brothers to erect for defendant a hotel building at the cost of $22,000. In January, 1940, defendant notified Cline Brothers that because of their delay in the work he was taking over the job and thereafter he would pay directly to the material men and laborers for material furnished and labor performed. Subsequent to this notice, defendant did pay for certain material used in the building. What, if any, connection Cline Brothers thereafter had with the actual construction of the hotel is not disclosed in the record.

Plaintiff, as indicated, is a contractor whose principal work is the construction of terrazo and tile floors. In February, 1940, he was visited at his place of business in Charleston, West Virginia, by Ott Cline, a member of the firm of Cline Brothers, and requested to submit prices on material and labor for laying a terrazo floor in the lobby of the defendant's hotel building. Plaintiff was informed at that time by Cline that defendant, Mullins, would pay for material furnished and for the labor performed.

Pursuant to this notification, plaintiff, on February 17, 1940, sent his workmen to Grundy with material and machinery to lay the floor. Plaintiff's workmen were instructed not to perform this work unless defendant would agree to pay for same. Upon their arrival at Grundy, plaintiff's workmen were unable to locate defendant, as he was in attendance upon his wife who was ill in a hospital in Kingsport, Tennessee. However, the workmen began work on the floor and had practically completed it when the defendant returned to Grundy and

visited the hotel. Upon the arrival of the defendant, he was informed by the agent of the plaintiff that the work would not be completed unless he agreed to pay for same. In response to this notification, defendant stated to the agent that he would pay for it, and when the job was completed to come over to the old hotel and he would be given a check for the floor job.

The agent of the plaintiff testified that in further reliance upon this statement the work was fully executed.

It also appears that when plaintiff's employees first brought the material to put in the floor, it was refused, not by Cline Brothers, but by defendant's inspector, on the ground that it was not the color desired, and that the material required by the inspector was duly furnished.

Testifying as a witness, plaintiff stated that he did not extend credit to Cline Brothers, or Ott Cline, for the reason that he had previously done work for Cline Brothers and had found them unreliable; that at no time was demand made upon Cline Brothers for payment; that he relied solely upon the promise of the defendant to pay for the work performed.

Whether Ott Cline was available as a witness in the trial of the case does not appear from the record. It is a significant fact, however, that he was not introduced as a witness to deny the statement of plaintiff that he informed him that the defendant was to pay for the laying of the terrazo floor. It is self-evident that the defendant was the beneficiary of the material furnished and the labor performed by the plaintiff. If he suffered any loss in the construction of the terrazo floor, the amount is not shown in the record.

The defendant relies upon the case of *Noyes, etc.* v. *Humphreys, supra,* to sustain the contention that the promise, if made, was a collateral promise and within the inhibition of the statute of frauds.

In our opinion the case at bar and the *Noyes Case* are not parallel cases.

In the *Noyes Case* the following facts clearly distinguish the cases. In the opinion this is said:

" * * * It appears from the evidence certified as given upon the motion for instructions, and upon overruling the motion for a new trial, that the testator of the plaintiff in error, by a contract dated the 1st day of January, 1844, leased a salt property in Kanawha county to James M. Thompson, who bound himself to build a salt furnace, fixtures, &c., at his own expense.

"The testator of the plaintiff in error by the contract agreed to furnish Thompson the sum of two thousand dollars towards said improvements, and in part payment of their erection. In pursuance of the said contract, Thompson employed the defendant in error to build some cisterns, and to do the work for him under the lease. After doing a part of the work, he stopped it, announcing his determination to leave, declaring he was done with the job, and would not proceed with the work upon the faith or confidence of Thompson being the paymaster for it. And thereupon, the said testator said to him the work was commenced; it must go on; and told him to go on and finish it, that he would pay for it, or see it paid. The defendant in error thereupon resumed work and continued until it was finished.

"The defendant in error further gave in evidence the declaration of said testator, shortly after the conversation aforesaid, that he would pay for the work done or doing by the defendant in error, and that he had already advanced Thompson two thousand dollars for improvements which the later by his lease was bound to make.

"It was further proved by the plaintiff in error, that her testator had advanced to Thompson more than two thousand dollars; that Thompson could not make said improvements without such advances, and that he was unable to pay the defendant in error for his work according to the contract, either at the time of making the same or at any time since. That when the work was finished, the defendant in error rendered his account, being the

same stated by him in the bill of particulars filed in the suit, which Thompson entered in his book in the presence of the defendant in error; the several payments made by Thompson from time to time during the progress of the work were deducted, a balance ascertained, for which Thompson executed his bond at nine months. The bond is exhibited, and has two seals to it, but is signed by Thompson alone; and was drawn to be signed by the testator; but there is no proof that he ever agreed to sign it. The insolvent papers of the defendant in error, including the schedule, were also given in evidence, from which it appears that on taking the oath of insolvency on the 29th day of July, 1847, he surrendered said note on Thompson, but did not surrender any claim on the testator. This suit was brought in the year 1848; and it was proved that the debt upon which the defendant in error took the oath of insolvency, was paid before he instituted this suit."

In *Parksley Bank* v. *Chandler's Adm'rs,* 170 Va. 394, 399, 196 S. E. 676, Mr. Justice Holt quotes with approval the rule stated in *Davis* v. *Patrick,* 141 U. S. 479, 12 S. Ct. 58, 35 L. Ed. 826, which is as follows:

"The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against the actual obligations of the defendant."

In the case at bar the verdict of the jury resolved all conflicts in the evidence in favor of the plaintiff; consequently, it established that the promise relied upon was an original promise, and therefore, the statute of frauds is not applicable.

The judgment of the trial court will be reversed; the verdict in favor of the plaintiff will be reinstated and final judgment will be entered against the defendant in the sum of $623, with interest from March 2, 1940.

*Reversed.*

HUDGINS, J., dissenting.

This action involves a controversy between the owner, George W. Mullins, and a sub-contractor, John J. Alessandrini, who furnished labor and material used in the construction of a building.

The owner made a contract with Cline Brothers, whereby it was agreed that the owner would pay Cline Brothers $22,000 for the erection of a hotel building according to plans and specifications. The Cline brothers informed Alessandrini, of Charleston, West Virginia, that they were the general contractors for the construction of the building and asked him to submit a bid for material and labor necessary to install terrazo floors and bases. Alessandrini's bid for this material and work was accepted by the general contractor. According to this contract between the general contractor and the sub-contractor, the material was furnished and the work performed to the satisfaction of all parties involved. These conceded facts establish the contractual relations between the owner and the general contractor, and between the general contractor and the sub-contractor, but they do not establish any contractual relations between the owner and the sub-contractor.

In *Coleman* v. *Pearman*, 159 Va. 72, 79, 165 S. E. 371, we said: "Laborers and materialmen who are unwilling to extend credit to a general contractor have three courses, or methods, open to them to obtain additional security for their claims out of the funds due, or to become due, under the building contract: (1) By taking the steps prescribed by section 6429a. of the Code of 1930 to fasten personal responsibility upon the owner; (2) by filing separate and independent liens under Code, section 6428; (3) by taking advantage of a lien perfected by the general contractor. Whichever method is followed, written notice to the owner of the amount and character of the claim is a prerequisite to the perfection of the lien or to fasten personal responsibiltiy upon the owner."

The sub-contractor failed to take any one of the steps enumerated to impose liability upon the owner. He gave the owner no notice, written or otherwise, of the amount and character of his claim.

The majority opinion cites three separate and distinct fragments of evidence upon which its conclusion, imposing liability upon the owner, is based. These are: (1) An oral statement made by the general contractor to the sub-contractor; (2) payment by the owner to other creditors of the general contractor; (3) the sub-contractor's instruction to his workmen, and an oral promise made to the workmen by the owner. These fragments of evidence, whether considered separately or together, are not sufficient, in my opinion, to impose liability upon the owner.

Plaintiff himself testified that one of the Cline brothers, when requesting his bid, told him that the owner would pay for the work and material. No person is legally bound by the statement of a third party unless such third party is duly authorized to speak for such person. The mere fact that Cline told Alessandrini that the owner would pay for the work and material does not prove, or tend to prove, that Cline was acting as Mullins' agent. An independent contractor is in no sense an agent of the person for whom he has agreed to erect a building. No contention is made, nor any semblance of proof introduced to establish any real or apparent authority in either of the Cline brothers to represent Mullins as his agent. The plaintiff testified that Cline told him that he was the general contractor and Mullins was the owner. This was sufficient to put him on notice that Cline was not authorized to represent the owner.

The mere fact that the owner, under circumstances not disclosed by the record, agreed to pay and did pay other persons, who furnished labor or material used in the construction of the building, is not evidence tending to prove that the owner is liable to this plaintiff.

The statute, sec. 6432, provides:. "If the owner is compelled to complete his building, structure, or railroad, or any part thereof undertaken by a general contractor in consequence of the failure or refusal of the general contractor to do so, the amount expended by the owner for such completion shall have priority over all mechanics' liens which have been or may be placed on such building, structure, or railroad by such general contractor, a sub-contractor under him, or any person furnishing labor or materials to either of them."

The fact that the owner took over a part of the construction of the building did not, of itself, render the owner personally liable to sub-contractors of the general contractor.

Alessandrini concedes, in his own testimony, that he had no communication with Mullins, direct or indirect, from the time he submitted his bid to Cline Brothers until three hours before the work was completed. He said that he instructed his workmen not to begin work on the premises until they had received assurance from Mullins that he would pay for the labor and material. His workmen testified that they received these instructions but that they did not ask Mullins about payment when they began work on February 17, and that they so reported to their employer. Alessandrini, then, with full knowledge of the fact that Mullins had made no promise to him or to his men to pay for labor and material furnished by him according to his agreement with the general contractor, permitted his workmen to complete the undertaking. Mullins denied that he made any promise to the workmen. They, however, testified that he did. Joe Cary, one of the workmen, said that, between 7:30 and 8:00 o'clock on March 2, while he was polishing the floors, Mullins came into the building. He then stopped the polishing machine, and, as soon as Mullins said "that his pay would be ready for him when the work was completed, he pressed the (starter) button and went on and finished the work" by 11:00 o'clock of that day.

This evidence conclusively shows that the entire work was completed before there was any communication, direct or indirect, between Alessandrini and Mullins.

Plaintiff failed to prove that the owner knew the amount of the bid he submitted to the general contractor. The workmen did not claim to have told Mullins the amount of the bid or the value of the work. The promise of Mullins, as stated by the workmen, was not to pay a definite sum of money, but simply "to pay for this work". Alessandrini did not testify that the owner promised to pay any definite sum. He alleged, in his notice of motion, that "the prices charged by plaintiff for said work and material are the usual and prevailing prices for such work and material."

I have searched this record in vain to find even a scintilla of legal evidence tending to prove that Mullins' obligation to the sub-contractor was "an original independent undertaking on the part of the defendant to pay for the work done by the plaintiff."

Judge Kelly, in *Maddux* v. *Buchanan,* 121 Va. 102, 107, 92 S. E. 830, 831, said: "Laborers and materialmen are favored by the statute, but not to the extent of requiring the owner of property to pay the same bills twice, once to the builder with whom he has contracted, and again to parties with whom he has no contractual relations. Our present mechanic's lien laws deal fairly with both the owner and the sub-contractor, requiring the owner, after notice, to withhold from the general contractor enough to pay the sub-contractor, provided however, 'the same does not exceed the sum in which the owner is indebted to the general contractor at the time the notice is given, or may thereafter become indebted by virtue of his contract with said general contractor.' (Code, secs. 2477, 2479.) * * * . The statute was designed to protect sub-contractors, and creates a liability which would not otherwise exist, but the terms must be met before its benefits can be enjoyed. In other words, as this court has said in former decisions, 'the owner is under

no obligation to protect the interest of the sub-contractor, except where the latter has complied with the law and thus placed himself in a position to demand protection from the owner.' (*Schrieber* v. *Citizens' Bank of Norfolk,* 99 Va. 257, 262, 38 S. E. 134, 135; *University of Va.* v. *Snyder,* 100 Va. 567, 581, 42 S. E. 337; *Steigleder & Son* v. *Allen,* 113 Va. 686, 691, 75 S. E. 191.)''

Plaintiff did not perfect a mechanic's lien, which doubtless, under the circumstances, would have been worthless to him; nor did he attempt to fasten personal liability upon the owner in the method provided by statute. His only contention is that he extended credit upon ''an independent undertaking'' made to him by the owner. The only proof of such ''an independent undertaking'' is an alleged promise made by the owner after all the materials had been delivered and installed. Credit is usually extended *before* the delivery of goods or the performance of work, not *after* these are accomplished facts.

Additional proof of the real party to whom plaintiff extended credit is found in the testimony of the owner, as follows; ''after the floor work was done, Joe Cary and W. M. Smith, employees of plaintiff, came to him (George W. Mullins) and presented an order to owner from Cline directing owner to pay plaintiff, and asked him to pay for the floor job, but that he advised them that the contractors, Cline Bros., were due nothing on their contract, and he refused to pay for the work and materials that went into the floor job.'' It is significant that neither Joe Cary nor W. M. Smith denied that after the completion of the work, they requested and obtained an order from the general contractor requesting the owner to pay the amount due by him to the sub-contractor.

This court held, in *Hooff* v. *Paine,* 172 Va. 481, 2 S. E. (2d) 313, that a written promise made by an owner to a sub-contractor and executed after the work had been completed, was void because such promise was not

supported by a valuable consideration. While I did not agree with the majority of this court in so holding, as evidenced by my dissenting opinion in that case, I cannot reconcile the conclusion of the majority in this case with the reasons set forth in the opinion in that case.

The alleged promise relied upon in the instant case was not communicated to the sub-contractor until after the material had been furnished and the work completed, and after the owner had declined to honor an order for payment given to the sub-contractor by the general contractor.

For these reasons I think the judgment of the trial court should be affirmed.

SPRATLEY, J., concurs in this dissent.