# Richmond

## C. H. LAWSON v. STATES CONSTRUCTION COMPANY, INC.

March 10, 1952.

Record No. 3880.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

514

The opinion states the case.

*R. T. Armistead,* for the plaintiff in error.

*Jones, Blechman & Woltz* and *Herbert V. Kelly,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

On this writ of error granted to C. H. Lawson, plaintiff below, we have to determine whether his claim against States Construction Company, Inc., for $1,796 was barred by the statute of frauds, which provides that no action shall be brought to charge any person upon a promise to answer for the debt of another unless the promise is in writing. Code, 1950, § 11-2 (4). The trial court held it was barred and, consequently, set aside a jury's verdict in favor of Lawson and entered judgment for States.

In 1948 States had a government contract to build a parking area and to do other construction work at Fort Eustis. It sub-contracted to Gordon B. Pace certain excavating, grading and concrete work on the job. Pace was to furnish the necessary materials and equipment. Not having suitable equipment of his own, Pace came to Lawson to rent Lawson's equipment. Lawson demurred because Pace already owed him money and was in bad financial condition. Pace assured Lawson that States would pay the rent. Lawson contends that States agreed to do so and that solely on the faith of States' promise to pay

he let Pace have the equipment. States denies making that agreement and contends that at most the evidence showed only a promise to answer for Pace's debt.

The verdict of the jury settled the conflicts in plaintiff's favor and the case made for him by the evidence, as the jury could have viewed it, was this:

When Pace applied to Lawson for the equipment, Lawson told him he could not let him have it "without Al Brout standing for it." Brout was president of States Construction Company and its *alter ego*. Pace replied that he knew Brout would take care of it, but Lawson said Brout would have to call him up. On the next day, or the day following, a telephone call came through purportedly from States which was taken by Lawson's bookkeeper, saying that "they would be responsible for the Gordon B. Pace bill." The bookkeeper so informed Lawson and the equipment was then turned over to Pace. The bookkeeper did not know who made the call, but "they said it was States Construction Company and we were expecting the call." Lawson said Post, the vice-president of States, made the call, but admitted he did not know and Post denied it.

Bills for the rental were made out to Gordon B. Pace, with a copy to States Construction Company, as follows: June 28, $1,411.50; July 31, $930; August 31, $702. Copies of these bills were also mailed to Pace. The copy of the June 28 bill sent Pace was made out to him alone, but the July and August bills were made out to "Gordon B. Pace & State Construction Company." There was also sent to Pace a bill dated October 30 for $164, made out to Pace and States Construction Company, which was not listed in the notice of motion but the amount of which was, nevertheless, included in the $1,796 sued for. There was no proof that a copy of this bill was sent to States.

The account for the equipment rental was carried on the books of Lawson in the name of Gordon B. Pace, with a notation that States Construction Company was guarantor. Lawson testified this was done as a matter of record and Pace was sent statements so he would know what was coming out of his contract. Lawson's bookkeeper testified that Pace was billed for the rent because "He was the man renting the equipment. The bill was guaranteed by States Construction Company."

The June 28 invoice for $1,411.50 was paid by States by check signed by Brout as president, payable to "C. H. Lawson

*for G. B. Pace''* and delivered to Lawson by Brout in the presence of Pace. The italicized words were covered by an ink spot, without explanation as to how that occurred.

The July and August bills were not paid. Brout did not acknowledge the July bill, but after receipt of the August bill he wrote Lawson that Pace had ''drawn the full amount of his contract with us.'' Lawson thereupon took his equipment off of the job.

Lawson testified that he went to see Brout two or three times about the matter; that Brout did not deny that he had ''authorized the account.'' Lawson asked why he gave him the check; Brout denied that he had done so, but his bookkeeper found and produced the check, whereupon Brout said ''He would see what he could get out of Gordon Pace and pay me.''

In 1949 Lawson placed his claim against States in the hands of an attorney for collection. States did not reply to the first letter of the attorney but after the second he wrote that he had been unable to see Pace but had finally done so and had arranged for Pace to do some work and that he would make a weekly deduction out of Pace's pay and send it to Lawson. Thereafter Brout sent the attorney a check for a small amount, which was refused.

Lawson testified that he refused in the beginning to let Pace have the equipment because Pace was insolvent; that he was not expecting Pace to pay the account; that he was not looking to Pace, but was looking to States; that he had not extended credit to Pace but had ''extended credit to State Construction Company through Pace.''

''* * * Every collateral promise to answer for the debt, default or misdoings of another person, is within the statute, and void if not in writing; but original undertakings need not be in writing, not being within the statute. The difficulty is in determining under which head the undertaking in any particular case is to be classed.'' *Noyes* v. *Humphreys,* 11 Gratt. (52 Va.) 636, 643. *Alessandrini* v. *Mullins,* 178 Va. 69, 72-3, 16 S. E. (2d) 323, 324.

The holding in this jurisdiction, and in a majority of others, is that if the original contractor (Pace in this instance) remains liable and the undertaking of the third party is merely that of surety or guarantor, the undertaking is collateral and within the statute of frauds. *Way* v. *Baydush,* 133 Va. 400, 408,

112 S. E. 611, 614; *Friedlin* v. *Crockin,* 122 Va. 521, 524, 95 S. E. 432, 433; *Engleby* v. *Harvey,* 93 Va. 440, 444, 25 S. E. 225, 226; *Mankin* v. *Jones,* 63 W. Va. 373, 60 S. E. 248, 15 L. R. A. (N. S.) 214; *Barley* v. *Sameth,* 106 W. Va. 463, 145 S. E. 821; 37 C. J. S., Frauds, Statute of, § 20, p. 527.

In ascertaining to whom credit was extended, the intention of the parties governs. This intention is to be ascertained from the words used by the parties and all of the circumstances surrounding the transaction. The real character of the promise does not depend altogether upon the words or form of expression used, but largely upon the situation of the parties and what they mutually understood from the language, whether they understood the transaction to be a direct or a collateral promise. *Southside Brick Works* v. *Anderson,* 147 Va. 566, 573, 137 S. E. 371, 373; Note to *Mankin* v. *Jones, supra,* 15 L. R. A. (N. S.) at p. 216; 49 Am. Jur., Statute of Frauds, § 63, p. 419, § 91, p. 448.

Measuring the evidence by the applicable rules, it was not sufficient to support the verdict and it was proper for the court to set the verdict aside for two reasons:

1. The evidence does not establish either a direct or a collateral promise by States to pay Lawson. While Pace told Lawson that States would pay, it is not contended that Pace had any authority to bind States. The only evidence of a promise by States was that of Lawson's bookkeeper, who testified that a "telephone call came through from States Construction Company and I received it and they stated that they would be responsible for the Gordon B. Pace bill and I so informed Mr. Lawson and we allowed them to have the equipment from that time on." But he further testified that he did not know to whom he talked; that so far as he knew it could have been one of Pace's assistants; that he had no idea who it was. He said he did not remember the exact words of the conversation, but the way he understood it was that States was responsible for the bills after that telephone conversation. Lawson said: "The telephone rang, said it was States Construction office calling up. Was all right to have Gordon Pace to have the equipment to go to Fort Eustis on the job." But Lawson did not claim that he heard the conversation. He was only informed about it by his bookkeeper. While Lawson testified that Brout did not deny that he had authorized the account, or had authorized the furnishing of the equipment, yet he stated no definite time or cir-

cumstance and his evidence does not show that Brout's silence on that score was at a time when there was any reason for him to make denial.

The burden was on the plaintiff to prove a binding promise on the part of States. He did not carry that burden by the evidence he introduced, either direct or circumstantial.

2. Assuming that the telephone conversation was authorized by States, still the evidence does not support the plaintiff's claim that it was understood and agreed that the debt for the equipment was to be the debt of States and not the debt of Pace.

The account was charged to Pace, not to States, on Lawson's books, with a notation that it was guaranteed by States. This raised a strong, though not conclusive, inference, that credit was not extended to States alone. *Cutler* v. *Hinton*, 6 Rand. (27 Va.) 509, 518; *Barley* v. *Sameth, supra,* 145 S. E. at p. 823; 49 Am. Jur., Statute of Frauds, § 94, p. 450; 37 C. J. S., Frauds, Statute of, § 285 at p. 821.

Not only so, but Lawson testified that he extended credit to States through Pace; his bookkeeper, who received the call, said that States "guaranteed Pace's Bill;" and Lawson several times in his testimony stated that the account was "guaranteed" by States.

■ While the use of the word "guaranteed" does not necessarily classify the promise as collateral, such use is strong evidence of the nature of the understanding in the absence of other controlling facts. 37 C. J. S., Frauds, Statute of, § 26 d., p. 536; 2 Williston on Contracts, Rev. Ed., § 465 at p. 1341.

As stated, the first bill was made out only to Pace; the copies sent to States were all made out in the name of Pace; but after the June 28 bill was paid by States, the copies thereafter sent Pace were made out jointly to him and States.

Lawson testified: "The account was carried in the name of Gordon B. Pace and guaranteed by the State Construction Company which they paid a portion of it." That was a reference to the payment of the June 28 bill by States, which, as noted, was by check delivered to Lawson in the presence of Pace. Brout testified without contradiction that that was done at the request of Pace. The check itself stated on its face that it was paid to Lawson for G. B. Pace, and there was a notation on the check "Acct G. B. Pace," which meant, Brout said, that it was chargeable to Pace's subcontract account.

■ By the weight of authority it is held that "if no independent consideration is present, it is requisite that credit should be given exclusively to the promisor and that, if any credit is given or any liability attaches to him for whose benefit the promise is made, the promise is collateral and within the statute, and this is so, although the collateral undertaking may have been the principal inducement to the delivery of the goods or the performance of the services." 37 C. J. S., Frauds, Statute of, § 20 at p. 527.

It is true that Lawson repeatedly said that he extended credit only to States and did not look to Pace for payment, but in view of the other evidence referred to, that statement is not sufficient to charge States on an original undertaking unless the minds of the parties met in that respect. That States did not understand that it was bound by an independent obligation to pay for the use of the equipment, which it was the business of Pace to furnish, is strongly indicated by the uncontradicted evidence that States paid Pace in full on his contract.

Brout testified that he was the only one in his company authorized to guarantee Pace's bill and that he did not do so. He said that he had never done any business with Pace before and when he made the contract with him he did not know that Pace was insolvent; that the first he knew that Pace was using Lawson's equipment was when Lawson came to his office and told him that Pace owed him for equipment rental, and that he then told Lawson he would tell Pace to pay him and see to it that he did try to pay him. He said that Pace had equipment of his own and he did not know why Pace did not use it. Pace died before the case was tried.

■ Plaintiff further contends that the undertaking of States was not within the statute because it was a promise made for the benefit of States. The ground of this contention is that the equipment was used on work States had contracted to do, and that if Lawson's equipment had not been used by Pace, then States would have had more work to do when it took over Pace's subcontract when Pace quit. Brout admitted that was a benefit "if you want to put it that way." However, it was a benefit arising after the alleged promise, not one received at the time the promise was made. When the benefit was received it had already been paid for. It represented work Pace had contracted to do and for which Pace had been paid.

■ The kind of benefit that takes the promise out of the statute is one which the promisor receives or expects to receive when he makes the promise, resulting in an original, independent undertaking by the promisor. The consideration for the promise must be a direct benefit to the promisor and the primary object of making the promise, as distinguished from a benefit which is merely incidental, indirect or remote. 37 C. J. S., Frauds, Statute of, § 21, at p. 531; 49 Am. Jur., §§ 74, 75, pp. 426, 428; *Hurst Hardware Co.* v. *Goodman,* 68 W. Va. 462, 69 S. E. 898, 32 L. R. A. (N. S.) 598, Ann. Cas. 1912 B, 218.

■ Plaintiff argues that the defendant was not entitled to rely on the statute of frauds because it was not set up in the grounds of defense. He concedes that prior to the adoption of the present rules of court the defense could be made under a plea of the general issue, *Eaves* v. *Vial,* 98 Va. 134, 34 S. E. 978; but he insists that since pleas of the general issue have been abolished and defendants are required to file grounds of defense, Rules 3 :5 and 3 :7, this defendant could not rely on the statute unless specifically set out in its grounds of defense. However, as stated by the trial court in overruling this contention, the notice of motion did not indicate the necessity or propriety of such a plea. It merely alleged that the plaintiff agreed with defendant to furnish certain machinery and equipment, which he did, and rendered bills therefor to the defendant, without alleging that it was furnished to Pace, or that defendant had promised to pay for it. There was nothing on the record to suggest that the statute of frauds would be involved until plaintiff introduced his evidence. As defendant points out, if the plaintiff had attempted to show that Pace was defendant's agent, it could as well have been argued that the defendant should have pleaded non-agency before being allowed to deny it.

The judgment of the trial court was right and is accordingly

*Affirmed.*