## Richmond

AMERICAN INDUSTRIAL CORPORATION v. FIRST & MERCHANTS NA-
TIONAL BANK.

December 1, 1975.

Record No. 740615.

Present, Carrico, Harrison, Cochran and Poff, JJ.

*Alfred J. Owings* (*Greer P. Jackson, Jr.; Spinella, Spinella &
Owings*, on brief), for plaintiff in error.

*William R. Cogar* (*F. Claiborne Johnston, Jr.; Mays, Valentine,
Davenport & Moore*, on brief), for defendant in error.

Per Curiam.

The sole question in this case is whether an undertaking by First &
Merchants National Bank (the Bank) constituted a guaranty, binding
the Bank to pay American Industrial Corporation (American) the

amount of a debt owed American by Industrial Automation, Inc. (Industrial). The trial court held that the undertaking was not a guaranty, and we now review that holding.

American brought this action against Industrial and the Bank to recover the purchase price, $15,350, of a hoist American had furnished Industrial for installation on a lightship which Industrial had constructed pursuant to a contract with the United States Coast Guard. Judgment by default was entered against Industrial. In a subsequent jury trial of American's claim against the Bank, the trial court struck American's evidence and entered summary judgment for the Bank.

The evidence shows that in early 1972 Industrial was awarded a contract to construct the lightship. Negotiations between American and Industrial culminated in an agreement on May 1, 1972, for American to furnish a general purpose hoist required for the lightship. The terms of the agreement required Industrial to secure a "letter of credit" from its bank guaranteeing that "$15,350 is set aside in a special account payable to [American] upon delivery of quoted equipment."

On May 1, 1972, the Bank, through its loan officer, David R. Holton, forwarded a letter to American, stating:

"This letter will serve to confirm our agreement to lend Industrial Automation, Inc. . . . an amount up to but not to exceed $15,350. The proceeds are to be used exclusively for the purchase of the hoist being sold by you to Industrial Automation, Inc. This commitment will expire on July 31, 1972."

On May 16, American wrote the Bank, stating that the hoist could not be delivered before September 15, 1972, and that Industrial's order would be put "on hold" unless the Bank's commitment was extended until November 1, 1972. The letter also stated that American's agreement with Industrial required a "letter of credit," which would be the Bank's "guarantee that [American] would be paid $15,350."

On May 17, Holton, for the Bank, wrote American as follows:

"Please refer to my letter of May 1. This letter will serve to extend our commitment confirmed in that letter through October 31, 1972."

Following receipt of the May 17 letter, E. L. Fall, a representative of American, telephoned Holton. Fall told Holton that "it would be

impossible for [American] to continue with this contract unless [it] received some guarantee of moneys that would be available to Industrial Automation through their bank." Holton, according to Fall, stated that the Bank was "working with" Industrial and would "send [American] a letter stating so."

On May 19, Holton wrote Fall, as follows:

"To confirm our agreement over the telephone yesterday, any funds advanced to Industrial Automation, Inc. will be in the form of a Cashier's Check payable to your firm. I hope this will suffice for your credit requirements."

Thereafter, manufacture of the hoist was completed. It was shipped from Philadelphia on November 1, 1972, and received by Industrial in Richmond on November 3. On December 6, American billed Industrial for the hoist, and, after Industrial's failure to pay, on March 15, 1973, American made demand upon the Bank for payment. The demand was refused.

The record shows that between May 1, 1972, the date the Bank wrote its commitment letter to American, and October 31, 1972, the expiration date of the commitment, the Bank made four advances, totaling $35,000, to Industrial. None of these advances, however, related to the loan involving the hoist or to Industrial's contract with the Coast Guard. Between October 31, 1972, and June 14, 1973, the date the present litigation was commenced, the Bank made six advances, totaling $62,900, to Industrial. The last two advances, totaling $15,400, in May and June, 1973, related to Industrial's contract with the Coast Guard. None of the six advances, however, related to the loan involving the hoist. It was uncontradicted that the Bank never loaned "any money on account of the hoist."

In our opinion, the Bank's liability must arise, if at all, from the Bank's three letters of May 1, 17, and 19, 1972. Only if from those three letters, singly or collectively, a guaranty appears, would the Bank be liable to American.

■ As related to this case, a guaranty is a separate, collateral, and secondary undertaking to answer for the debt of another in event of his default. *See Bourne v. Board of Supervisors of Henrico County*, 161 Va. 678, 683-84, 172 S. E. 245, 247 (1934). Because any action brought to impose liability for a guaranty agreement would seek to charge the purported guarantor upon a promise to answer for the

debt of another, the Statute of Frauds (Code § 11-2(4)) requires that the agreement be in writing and signed by the guarantor. *See Lawson v. States Construction Co.,* 193 Va. 513, 517, 69 S.E.2d 450, 453 (1952).

While, as American points out, the Statute of Frauds does not require that the complete agreement between the parties show on the face of the signed writing, the nature and extent of the undertaking, including the essential promise to pay the debt of another, must so appear or the agreement is not enforceable. *See Saunders* v. *Bank of Mecklenburg,* 112 Va. 443, 450, 71 S.E. 714, 716 (1911). If reliance is based upon an unsigned writing, it must be referred to in the signed writing in clear and distinct terms. *See Darling* v. *Cumming's Ex'or.,* 92 Va. 521, 524, 23 S.E. 880, 881 (1896).

American contends that the various documents constituting its agreement with Industrial and the contents of American's May 16 letter to the Bank, together with the Bank's May 1, 17, and 19 letters should all be read together and that, when so read, the writings establish the Bank's undertaking to pay the debt of Industrial. The documents constituting American's agreement with Industrial, however, are not referred to in any manner in any of the letters signed by the Bank. Neither is American's May 16 letter to the Bank, in which American stated that its agreement with Industrial required that the Bank guarantee payment of $15,350, referred to in the Bank's subsequent letters of May 17 and 19.

There is, of course, in the Bank's May 19 letter to American the reference to the "agreement" reached "over the telephone" between Holton, the Bank's loan officer, and Fall, American's representative. American argues that the May 19 letter is signed, documentary evidence of an agreement, reached over the telephone, that American was "getting a guarantee" from the Bank. Fall's testimony, however, assuming its admissibility, fails to establish any such agreement. He stated that he told Holton "it would be impossible for [American] to continue with this contract unless [it] received some guarantee of moneys that would be available to Industrial Automation through their bank." Fall did not testify, however, that Holton agreed that the Bank would guarantee payment of Industrial's obligation. Holton's reply, according to Fall, was merely that the Bank was "working with" Industrial and would "send [American] a letter stating so."

 But even if Fall's testimony is considered sufficient to show an oral agreement between the Bank and American, the May 19 letter

must mirror the oral agreement by showing the Bank's *promise to pay* Industrial's debt before the letter can be construed as a guaranty and deemed sufficient to satisfy the Statute of Frauds. We believe the essential promise to pay is lacking.

The May 19 letter states that "any funds advanced to Industrial Automation, Inc. will be in the form of a Cashier's Check" payable to American. In the trial court and here, American has construed the May 19 letter as requiring the Bank to pay to American any funds advanced on Industrial's account at any time for any purpose. We cannot agree with this construction. Rather, we agree with a statement of the trial judge, made when he ruled that there was "no guarantee" by the Bank of Industrial's obligation to American:

> "To say, under [American's] construction, that this letter of May 19, such as it is, gave continuous open-ended draws on the [Bank] ad infinitum is beyond all reason."

There is no reasonable construction of the May 19 letter which would convert it into the unconditional promise American claims it received from the Bank. When, however, the May 19 letter is read together with the Bank's prior letters of May 1 and 17, the one possible reasonable construction emerges and the true nature of the Bank's undertaking is disclosed. But this construction does not avail American.

We believe the Bank's undertaking was no more than a promise to pay to American the proceeds of the loan the Bank had committed to make to Industrial for purchase of the hoist, if and when the loan commitment was exercised on or before October 31, 1972, an event which did not occur. The Bank's undertaking, therefore, was not a promise to pay the debt of Industrial and did not constitute a guaranty.

*Affirmed.*