954 F.2d 193
 26 Collier Bankr.Cas.2d 279, 22 Bankr.Ct.Dec. 783,
Bankr. L. Rep. P 74,402
 In re VIRGINIA-CAROLINA FINANCIAL CORPORATION; In re
Executive Investments of Virginia, Incorporated,
Joint Bkcy. Case No. 689-00964-BKC-WA1
and Adv. Proceeding No.
89-00172A, Debtors.
W. Alan SMITH, Jr., Plaintiff-Appellant,
v.
CREATIVE FINANCIAL MANAGEMENT, INCORPORATED, Defendant-Appellee.
 No. 91-3035.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 3, 1991.
Decided Jan. 13, 1992.
 
 John Ernest Falcone, Smith & Falcone, Lynchburg, Va., argued, for plaintiff-appellant.
 Robert Aristidis Ziogas, Glenn, Flippin, Feldmann & Darby, Roanoke, Va., argued (Maryellen F. Goodlatte, on brief), for defendant-appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and PHILLIPS and NIEMEYER, Circuit Judges.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 In this appeal we must decide whether the repayment by the debtors of a $200,000 loan, made under unique circumstances, is a voidable preference under the bankruptcy code, 11 U.S.C. § 547(b) (1988). Creative Financial Management, Inc., to whom $200,000 was paid by the debtors in bankruptcy, contends that the payment to it was not a preference because (1) it was not paid on account of a debt of the debtors but on the account of a third party's debt, and (2) the loan was collateralized so that its repayment does not fall within the definition of a voidable preference. The district court agreed and reversed the bankruptcy judge who had found that the payment to Creative constituted a voidable preference. Because the bankruptcy court's determination that Creative received payment on an antecedent debt of the debtors was not clearly erroneous and because Creative received a payment which it otherwise would not have received from the bankruptcy estate if the proceedings had been a Chapter 7 liquidation, we reverse with instructions that the decision of the bankruptcy court be affirmed.
 
 
 2
 * Executive Investments of Virginia, Inc. and Virginia-Carolina Financial Corp. are now debtors in bankruptcy. David Wilks is the sole shareholder, director, and officer of Executive Investments, and it appears that he has similar control over Virginia-Carolina Financial. Although these Virginia corporations (collectively referred to as "the Debtors") are separate legal entities, they were basically run as a single business enterprise. Records were intermingled and the two maintained a common bank account through which nearly all of the funds of both were regularly transferred.
 
 
 3
 On March 24, 1989 when the Debtors experienced serious financial difficulty and needed cash, Creative Financial Management, Inc. agreed to make them a $200,000, 30-day loan at an annual interest rate of 17%. Creative asked, however, that it receive some form of security for the loan. Following negotiations, Wilks and Creative settled on a security interest in a $360,000 promissory note payable by Southern Holdings Company to Virginia-Carolina Mortgage Fund Limited Partnership (the "Mortgage Fund"). The Mortgage Fund was organized by Wilks as a limited partnership in late 1987 or early 1988, and Wilks and one of the debtors serve as its general partners, although nearly all of the Mortgage Fund's working capital came from 33 limited partners. Because Creative insisted that the $200,000 loan be "tied to" the collateral, which was an asset of the Mortgage Fund rather than the Debtors, Wilks executed a promissory note on behalf of the Mortgage Fund simultaneous with the assignment of the $360,000 Southern Holdings note as collateral.
 
 
 4
 Although Wilks did not execute a note obligating the Debtors to repay the loan, the money from Creative was made immediately available to the Debtors. At Wilks' request, Creative sent a check for $127,000 directly to a creditor of the Debtors (whom they had already attempted to pay with a "bad check"). The rest of the money, some $73,000, went directly to the Debtors for working capital.
 
 
 5
 Despite the $200,000 infusion of cash to the Debtors, their financial status continued to deteriorate. They had hoped to repay the loan by selling lots in one of their real estate developments known as Windchase, located in Wilmington, North Carolina, but the projected sales in that project never occurred and the loan was not repaid on time. In an effort to resolve the crisis, the Debtors proposed that Creative invest in the Windchase project. Creative declined the offer, but did agree to buy two lots in the Windchase development for $316,000 from which the $200,000 loan to it would be repaid. Accordingly, on May 19, 1989, to purchase the two lots, Creative wrote a check to the Debtors for $316,000, the purchase price of the lots, and on the same day received from the Debtors a payment of $204,368.74, representing the amount of the March 24 loan plus interest.
 
 
 6
 Less than 90 days later, on August 10, 1989, the Debtors were involuntarily petitioned into bankruptcy.
 
 
 7
 The trustee in bankruptcy commenced an action in bankruptcy court against Creative to reclaim the May 19 payment made by the Debtors on the ground that the transfer of money was a voidable preference under § 547(b) of the bankruptcy code. After a trial, the bankruptcy court entered an opinion finding that the loan repayment was a voidable preference and ordered repayment by Creative to the bankruptcy estate. On appeal the district court reversed, holding that the bankruptcy court was clearly erroneous in its determination that the trustee had met his burden of proof under §§ 547(b)(2) and (5). This appeal followed.
 
 II
 
 8
 Federal law gives to the bankruptcy trustee extensive power to avoid certain pre-petition transactions which adversely affect the bankruptcy estate. See 11 U.S.C. §§ 544-551, 553 (1988). Among the more important of these voidable transfers is the "preference," which is, generally, a transfer made within a limited time prior to the filing of a bankruptcy petition that enables a creditor to receive more than the creditor would otherwise receive if, instead, the creditor were limited to his or her share of a distribution resulting from a Chapter 7 liquidation. See 11 U.S.C. § 547(b) (1988). Section 547(b) establishes:
 
 
 9
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
 
 
 10
 (1) to or for the benefit of a creditor;
 
 
 11
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 
 
 12
 (3) made while the debtor was insolvent;
 
 
 13
 (4) made--
 
 
 14
 (A) on or within 90 days before the date of the filing of the petition ... and
 
 
 15
 * * * * * *
 
 
 16
 (5) that enables such creditor to receive more than such creditor would receive if--
 
 
 17
 (A) the case were a case under chapter 7 of this title;
 
 
 18
 (B) the transfer had not been made; and
 
 
 19
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 20
 A trustee who seeks to reclaim for the estate a pre-petition transfer which is characterized as a voidable preference bears the burden of demonstrating the presence of all elements of a preference, as established in § 547(b). See 11 U.S.C. § 547(g) (1988).
 
 III
 
 21
 In the bankruptcy court, Creative argued that the trustee failed to establish that the payment to it by the Debtors was on account of the Debtors' antecedent debt as required by § 547(b)(2). It argued that the court, in making a § 547(b)(2) determination, must look exclusively at the promissory note and assignment of collateral executed by the Mortgage Fund. Creative thus contended that any payment on that note could not be on account of a debt of the Debtors because they never signed it. Nevertheless, considering all the evidence presented at trial, the bankruptcy court made a finding of fact that the May 19 payment was in return for a loan made to the Debtors, satisfying § 547(b)(2), and not to the Mortgage Fund as alleged by Creative. Notwithstanding the acknowledged facts that the Mortgage Fund executed a note and assigned collateral to Creative, the bankruptcy court found that none of the parties involved intended that a loan be made to the Mortgage Fund, that the Fund received none of the proceeds, that the Fund was not looked to for repayment, and that the Fund did not in fact repay the loan. Moreover, the bankruptcy court noted that Creative offered no explanation for why the Debtors would repay a loan owed by the Mortgage Fund.
 
 
 22
 Creative appealed and the district court reversed. Although the district court rested its decision on another point, it expressed disagreement with the bankruptcy court's finding that the Mortgage Fund was not the debtor on the $200,000 note, and concluded that such a finding contradicts the terms of the note in violation of the parol evidence rule.
 
 
 23
 The trustee now urges us to reaffirm the findings of the bankruptcy court, because the issues resolve mainly from findings of fact and the district court erred in failing to give due regard to the bankruptcy court's findings. See Bankruptcy Rule 8013. We agree with the trustee and reject the district court's narrow limitation of the evidence.
 
 
 24
 In support of its finding that the loan of $200,000 by Creative did create a debt of the Debtors, the bankruptcy court considered numerous facts established at trial. The proceeds of the loan, for instance, went directly from Creative to the Debtors (or their creditors). The evidence established that the Debtors were in dire need of financial assistance, and David Wilks, who negotiated the loan agreement, said that the money was intended for them. No evidence was produced to indicate that the Mortgage Fund was in need of any funds. J.W. Burton, the president of Creative who agreed to the loan on its behalf, made conflicting statements with regard to his understanding of the loan, but concluded "I was intending to make the loan to Mr. Wilks, who was the owner of these corporations, or the general partner.... I have learned a lot since [then] and I really didn't know the difference [between the various entities under Wilk's control.]" The bankruptcy court also pointed to the fact that Creative never looked to the Mortgage Fund for loan repayment, despite the financial hardship of the Debtors and their inability to repay the debt as it came due, and to the incontrovertible fact that it was the Debtors who ultimately repaid the loan. The bankruptcy court concluded: "[Creative] argues that this court should place form over substance and fact. This court is unwilling to [do so]."
 
 
 25
 Creative is able to point only to the promissory note signed by the Mortgage Fund obligating it to repay the loan and the related assignment of collateral. While the note was undoubtedly executed to assure that the collateral was committed, the bankruptcy court found that the Mortgage Fund was not the actual borrower.
 
 
 26
 A common sense approach for determining whether a loan repayment is "for or on account of [a] ... debt owed by the debtor" is to consider whether the creditor would be able to assert a claim against the estate, absent the repayment. See 11 U.S.C. § 101(12) (1988) (" 'debt' means liability on a claim."). Under the bankruptcy code, the term "claim" is defined in the broadest possible language:
 
 
 27
 "claim" means--(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment....
 
 
 28
 11 U.S.C. § 101(5) (1988). Given this definition, one can hardly argue that Creative would not, absent the May 19 repayment, have had a claim against the bankruptcy estate when, as the bankruptcy court found, Creative paid money to and for the benefit of the Debtors and with the intent that the money be returned by them with interest. Cf. Lawson v. States Constr. Co., 193 Va. 513, 69 S.E.2d 450, 455 (1952) (oral promise to pay a debt is considered "an original, independent undertaking," outside of the statute of frauds, when the "promisor receives or expects to receive [a direct benefit for which the promise is made]").
 
 
 29
 Creative attempts to deflect the fact that the $200,000 loan created a debt of the Debtors by contending that the parol evidence rule bars consideration of essentially any evidence other than the promissory note signed by the Mortgage Fund. The Virginia courts state the parol evidence rule as follows:
 
 
 30
 [P]arol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written instrument.
 
 
 31
 Godwin v. Kerns, 178 Va. 447, 17 S.E.2d 410, 412 (1941). Creative maintains that the signed promissory note is a "complete unambiguous, unconditional written instrument" and the bankruptcy court should not have considered evidence relating to the conflicting collateral agreement between the Debtors and Creative. This argument misses the mark. Neither the trustee nor the bankruptcy court maintains that the Mortgage Fund did not obligate itself to pay $200,000 with interest within 30 days after signing the note. What is argued is that, independently of the promissory note signed on behalf of the Mortgage Fund, as a result of negotiations between Wilks and Creative and of the tender of $200,000 from Creative to the Debtors, the Debtors incurred an obligation to repay the loan as well. It is not unusual for more than one party to obligate themselves to pay a single debt. See Va.Code Ann. §§ 8.3-415 and 416 (Michie 1965) (accommodation and guaranty). Nor is it rare for a guaranty arrangement to take the form of a promissory note. See e.g. Wilson v. Stowers, 161 Va. 418, 170 S.E. 745 (1933); cf. American Indus. Corp. v. First & Merchants Nat'l Bank, 216 Va. 396, 219 S.E.2d 673, 675 (1975) ("a guaranty is a separate, collateral, and secondary undertaking to answer for the debt of another"). Reference to such a separate undertaking to repay a debt does not "vary, contradict, add to, or explain" the terms of a written promissory note and, thus, consideration of such evidence cannot run afoul of the parol evidence rule.
 
 
 32
 Giving due regard to the factual findings of the bankruptcy court in accordance with Bankruptcy Rule 8013, we affirm its conclusion that the May 19 payment to Creative by the Debtors of $204,369 was on account of an antecedent debt of the Debtors, thus satisfying the requirements of § 547(b)(2).
 
 IV
 
 33
 On the dispute under § 547(b)(5) the bankruptcy court rejected Creative's contention that because the loan was collateralized, it did not receive more than it otherwise would under a Chapter 7 proceeding. The court found that Wilks had no authority to assign collateral of the Mortgage Fund for the benefit of the Debtors without the permission of the limited partners. Therefore, the bankruptcy court concluded that the Mortgage Fund was not bound by the assignment and the loan from Creative was thus unsecured. Because other unsecured creditors will receive from the estate far less than they are owed, the court reasoned that Creative recovered more than it would under a Chapter 7 proceeding. On appeal, the district court reversed, concluding that Wilks did in fact have authority to assign the collateral on behalf of the Mortgage Fund and that § 547(b)(5) was therefore satisfied.
 
 
 34
 Although we reverse the district court on this point, we do so, not by focusing on the authority of Wilks to assign collateral of the Mortgage Fund, but by concluding that the requirements of § 547(b)(5) were satisfied regardless of the status of the Mortgage Fund collateral. Arguing that the status of the Mortgage Fund collateral is relevant, Creative contends that because it is secured by virtue of the assignment of the $360,000 promissory note belonging to the Mortgage Fund, it did not "receive more than [it] would [have] receive[d] if [ ] ... the case were a case under chapter 7." See 11 U.S.C. § 547(b)(5). While we agree that Creative might be correct if the Mortgage Fund, which assigned the collateral in Creative's favor, were the debtor in bankruptcy, we cannot accept the contention that a creditor's security interest in an asset of an entity not in bankruptcy, which "fully collateralizes" a loan to the bankrupt, enables the creditor to elect to draw from the bankruptcy estate 100% of the debt owed, at the expense of the debtor's other creditors.
 
 
 35
 While the bankruptcy code recognizes and respects the preeminent status given to the secured creditor by state commercial codes, a creditor is "secured" under the code only to the extent of the value of his interest in property of the estate. See 11 U.S.C. § 506(a) (1988) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." (emphasis added)). Section 547(b)(5) does not, as Creative seems to argue, add any special protections for the secured creditor. Indeed, the term "secured creditor" is not even included in that section. See 11 U.S.C. § 547(b). The case at hand is unlike that in which the collateral falls within the bankruptcy estate and every payment made by the debtor increases the debtor's equity in the collateral, thereby proportionally enhancing the value of the bankruptcy estate. See Small v. Williams, 313 F.2d 39, 44 (4th Cir.1963) (Payment upon a secured claim which has the effect of "releasing assets of comparable value to the claims of general creditors" is not preferential because it does "not deplete the debtor's estate or diminish the assets available for distribution among the general creditors.").
 
 
 36
 As the plain language of § 547(b)(5) conveys, the court must focus, not on whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever, but instead upon whether the creditor would have received less than a 100% payout in a Chapter 7 liquidation. See Countryman, The Concept of a Voidable Preference in Bankruptcy, 38 Vand.L.Rev. 713, 735-37 (1985) (Section 547(b)(5) incorporates the rule of Palmer Clay Products Co. v. Brown, 297 U.S. 227, 229, 56 S.Ct. 450, 450-51, 80 L.Ed. 655 (1936), that the trustee's case for a preferential payment is made when it is established that the defendant, without the payment, would have received less than a 100% payout in a Chapter 7 liquidation.). This interpretation reflects the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off vis-a-vis the other creditors of the bankruptcy estate than he or she would have been had the creditor waited for liquidation and distribution of the assets of the estate. See H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 177-78 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6137, 6138 ("[M]ore important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally.").
 
 
 37
 When we look to determine whether Creative would have received less in a Chapter 7 liquidation than the $204,368.74 it received on May 19, we can only conclude that it would have obtained no more than pennies on the dollar. Creative does not claim that it is secured by property of the bankruptcy estate. See 11 U.S.C. § 506(a). Nor does Creative claim any special priority under any other section of the bankruptcy code. The evidence introduced at trial indicates that general unsecured creditors would "optimistically" receive five to ten per cent of the money that the Debtors owed, and we fail to see how Creative can claim to take from the estate any more than this share.
 
 
 38
 Thus we hold that the trustee has proved the elements of a voidable preference under 11 U.S.C. § 547(b) and accordingly reverse the decision of the district court. The case is remanded with instructions to enter an order affirming the decision of the bankruptcy court.
 
 
 39
 REVERSED AND REMANDED WITH INSTRUCTIONS.