40 F.3d 1244
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
M. Yusuf MIAN, Plaintiff-Appellant,
v.
ARMENIAN ASSEMBLY OF AMERICA RELIEF FUND, INCORPORATED,
Defendant-Appellee,
and
Hirair S. Hovnanian, Defendant.
 No. 93-2385.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 13, 1994.
Decided Nov. 2, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-93-619-A).
 Charles G. Preston, Preston & Preston, Great Falls, VA, for appellant.
 Thomas Earl Patton, Cherie B. Artz, Schnader, Harrison, Segal & Lewis, Washington, DC, for appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 M. Yusef Mian appeals from the district court's order granting summary judgment for the Armenian Assembly of America Relief Fund, Inc. ("the Relief Fund") on Mian's breach of contract action. We find that the purported employment agreement is unenforceable under the Virginia Statute of Frauds, Va.Code Ann. Sec. 11-2(8) (Michie 1993). Consequently, we affirm.[1]
 
 
 2
 Mian worked for the Relief Fund from May 1991 until his termination in November 1991. He was hired by Hirair Hovnanian at a meeting that took place before May 1, 1991. Mian claims that the terms of that oral agreement were set out in a May 1, 1991, letter on Armenian Assembly of America ("Armenian Assembly")[2] letterhead.
 
 
 3
 This letter stated that Mian would work for a term of employment of sixteen and a half months, specified a salary for the term, discussed vacation and insurance benefits, and listed Mian's duties. The letter had no handwritten signature, but the typed name "Hirair Hovnanian, President" appeared at the bottom of the document. It was drafted by John Pasley, the AID/Armenian Project Director of the Relief Fund, who gave it to Mian. He declared that because he was not present at the meeting between Hovnanian and Mian, the letter did "not neces sarily reflect the terms of [the] oral agreement" and that he gave Mian a copy of the letter only because he thought Mian might find the summary of his job duties useful.
 
 
 4
 On May 31, 1991, Mian was given a letter of introduction to an official of the Armenian government. This letter, on Armenian Assembly letterhead, was signed by Hovnanian and stated that "we have engaged [Mian] as Director of Manufacturing and Plant Management in Armenia." In November 1991, Mian received a termination notice on Armenian Assembly letterhead dated November 26, 1991, and signed by Pasley stating that "the employment agreement between Yusef Mian and the Armenian Assembly Relief Fund, Inc. is no longer in effect."
 
 
 5
 Following his termination, Mian filed an action against the Relief Fund for breach of an employment agreement. He claimed he had an enforceable employment contract embodied in the May 1, 1991, letter bearing Hovnanian's typed name. The Relief Fund filed a summary judgment motion, arguing that Mian's contract claim was unenforceable under the applicable Statute of Frauds, Va.Code Ann. Sec. 11-2(8). After a hearing, the district court granted summary judgment for the Relief Fund, finding that the employment agreement alleged by Mian was unenforceable under the Virginia Statute of Frauds. Mian timely appealed. This Court granted Mian's motion to submit the case on briefs.
 
 
 6
 The Virginia Statute of Frauds states that "[u]nless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought ... [u]pon any agreement that is not to be performed within a year." Va.Code Ann. Sec. 11-2(8). Mian contends that the oral employment agreement he reached with Hovnanian was for sixteen and a half months. Therefore, the agreement must comply with Sec. 11-2(8) to be enforceable.
 
 
 7
 The Virginia Statute of Frauds provides that to be enforceable an oral agreement not to be performed within a year must be reflected in a written document "signed by the party to be charged or his agent." This document does not have to constitute the contract itself, but must state the essential elements of the agreement. Troyer v. Troyer, 341 S.E.2d 182, 185 (Va.1986). Citing Restatement (Second) of Contracts Sec. 134 (1981), Mian argues that the typed name of Hirair Hovnanian on the May 1 letter satisfied this requirement.
 
 
 8
 Section 134 provides that any symbol intended to authenticate a writing as that of the signer is a signature. A typed name appearing on a document without the knowledge or consent of the person named does not constitute a signature for purposes of section 134. See Durham v. Harbin, 530 So.2d 208, 211 (Ala.1988). In this case, the May 1 letter with Hovnanian's typed name was prepared "independently" by Pasley. There is no evidence that Hovnanian directed or authorized Pasley to draft the letter or that he even knew that Pasley did this. Consequently, Hovnanian's typewritten name did not constitute a signature for purposes of the Statute of Frauds.
 
 
 9
 Even if the May 1 letter alone does not satisfy the Statute of Frauds, Mian argues that the letter, in conjunction with the May 31 and November 26 writings, renders the oral agreement enforceable. Under Virginia law,
 
 
 10
 While ... the Statute of Frauds does not require that the complete agreement between the parties show on the face of the signed writing, the nature and extent of the undertaking ... must so appear or the agreement is not enforceable.... If reliance is based upon an unsigned writing, it must be referred to in the signed writing in clear and distinct terms.
 
 
 11
 American Indus. Corp. v. First & Merchants Nat'l Bank, 219 S.E.2d 673, 676 (Va.1975). Neither of the signed writings refers to the May 1 letter in clear and distinct terms. The May 31 letter states that Mian had been "engaged" as the Director of Manufacturing and Plant Management in Armenia and that Hovnanian wished to have Mian appointed to the Board of Directors of the Housing Project. However, it does not mention any of the other terms of the alleged employment contract, such as salary or the duration of Mian's employment, and makes no reference to the May 1 letter. Similarly, the November 26 letter makes no reference to the May 1 letter. Consequently, no genuine issue of material fact exists concerning whether the three writings could bring the purported agreement outside the Statute of Frauds.
 
 
 12
 Finally, Mian argues that his partial performance of the alleged employment contract removes the contract from the Statute of Frauds. This claim is without merit. "The doctrine of part performance is not available in Virginia in such actions at law for damages for breach of contract to take an oral agreement out of the statute of frauds." Lance J. Marchiafava, Inc. v. Haft, 777 F.2d 942, 946 (4th Cir.1985).
 
 
 13
 To be enforceable, the essential elements of Mian's employment agreement with the Relief Fund would have to appear in a signed writing or in an unsigned writing that clearly and distinctly references the signed writing. Because no genuine issue of material fact exists that could lead a rational factfinder to conclude that sufficient documentation exists to take the employment agreement out of the Statute of Frauds, the district court properly granted summary judgment for the Relief Fund.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Mian's Complaint apparently asserted three claims: (1) breach of employment contract; (2) breach of a covenant of good faith and fair dealing arising out of the contract; and (3) intentional infliction of emotional distress resulting from the breach of contract. The district court denied relief on all claims. The only issue asserted on appeal is whether Mian's employment agreement was enforceable under the Statute of Frauds
 
 
 [2]
 According to the Relief Fund, the Armenian Assembly and the Relief Fund are separate entities and Hovnanian was the president of both